## IN THE UNITED STATES DISTRICT COURT FOR THE

## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **(1) EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** )<br>)<br>)<br>**Plaintiff,** )<br>)<br>**vs.** )<br>)<br>**(1) HORIZONTAL WELL DRILLERS,** )<br>**LLC,** )<br>)<br>**–and–** )<br>)<br>**(1) WILBERT GLOVER, Individually,** )<br>**and on Behalf of All Others Similarly** )<br>**Situated,** )<br>)<br>**Plaintiff-Intervenor,** )<br>)<br>**vs.** )<br>)<br>**(1) HORIZONTAL WELL DRILLERS,** )<br>**LLC,** )<br>)<br>**Defendant.** ) | **Case No.  17-cv-00879-R**<br><br>**JURY TRIAL DEMANDED**<br>**ATTORNEY LIEN CLAIMED** |

## PLAINTIFF-INTERVENOR'S COMPLAINT

Intervening Plaintiff, Wilbert Glover ("Plaintiff-Intervenor"), for his causes of action against Defendant, Horizontal Well Drillers, LLC ("HWD"), on his individual behalf and on behalf of all others similarly situated, alleges and states as follows:

### I.  Preliminary Statement

1.     Plaintiff-Intervenor brings this action, on his individual behalf and on behalf of all others similarly situated, against HWD for violations of the Americans with Disabilities Act of 1990, as amended by the ADA Amendments Act of 2008, 42 U.S.C. § 12101 *et seq*. ("ADAAA") and the Genetic Information Nondiscrimination Act of 2008, 42 U.S.C. § 2000ff *et seq*. ("GINA").

2.     Plaintiff-Intervenor claims, on his individual behalf, that he was subjected to an unlawful post-employment medical examination in violation of the ADAAA.  He further

claims that HWD, following receipt of the results of the unlawful post-employment examination, terminated his employment because of his actual disability and/or because it regarded him as having a physical impairment.

Plaintiff-Intervenor claims, on his individual behalf and on behalf of all others similarly situated, that he and the other similarly-situated job applicants were subjected to impermissible and unlawful pre-employment medical inquiries in violation of the ADAAA and GINA: (1) when HWD solicited information from them about family health history (including check boxes for various specific conditions), current doctors' care status (with a required explanation box), current prescription drug status (with a required explanation box), and current health problems (including check boxes for various specific conditions and a required explanation box); and (2) when HWD conducted workers' compensation background searches on them before making a conditional offer of employment to them.

## II.  Jurisdiction

3.    This Court has jurisdiction over Plaintiff-Intervenor's federal claims under 28 U.S.C. §§ 1331 and 1343(3).

4.    Plaintiff-Intervenor's claims under the ADAAA are authorized by 42 U.S.C. § 12117(a).  Plaintiff-Intervenor's claim pursuant to GINA is authorized by 42 U.S.C. § 2000ff-6(a).

5.    Venue is properly in this district pursuant to 28 U.S.C. § 1391(b).

## III.  Parties

6.    Plaintiff is presently a citizen and resident of the City of Shreveport, State of Louisiana.

7.    HWD is an Oklahoma limited liability company doing business in the State of Oklahoma and in this judicial district.

8.    HWD has, at all times relevant to this lawsuit, employed fifteen (15) or more

employees.  At all times relevant to this lawsuit, HWD was an employer within the meaning of the ADAAA and GINA.

9.      As an employer under the ADAAA, HWD has been, at all times relevant to this lawsuit, a covered entity within the meaning of the ADAAA and GINA.

## IV.    Administrative Prerequisites

10.      Plaintiff-Intervenor timely filed a charge of discrimination against HWD with the United States Equal Employment Opportunity Commission ("EEOC") alleging violations of the ADAAA and GINA.

11.      After receiving Plaintiff-Intervenor's charge, the EEOC conducted an investigation.  The EEOC's investigation included within its scope HWD's use, during the period January 1, 2012 through June 30, 2014, of an employment application which sought information from job applicants about the applicant's family health history and personal medical history.

12.      Through its investigation, the EEOC determined that there was reasonable cause to believe that HWD had committed unlawful employment practices in violation of the ADAAA and GINA.

13.      The EEOC issued a Determination on Plaintiff-Intervenor's charge on February 3, 2016, and indicated findings therein that HWD:

(a)      unlawfully subjected Plaintiff-Intervenor to pre-employment medical inquiries in violation of the ADAAA and GINA;

(b)      discriminated against and denied employment opportunities to other employees and applicants in violation of the ADAAA and GINA pursuant to its routine pre-employment acquisition of genetic information and prohibited disability-related inquiries;

(c)      unlawfully subjected Plaintiff-Intervenor to a post-employment medical examination in violation of the ADAAA;

(d)      discharged Plaintiff-Intervenor from his employment because of his actual disability and/or because HWD regarded Plaintiff-Intervenor as having a physical impairment.

14.     Thereafter, the EEOC endeavored to eliminate HWD's unlawful employment practices by the informal conciliation process.  On December 1, 2016, the EEOC convened a conciliation conference.   The EEOC, HWD, and Plaintiff-Intervenor engaged in the conciliation process at the conference in an effort to resolve Plaintiff-Intervenor's charge.

15.     The parties' conciliation efforts to resolve Plaintiff-Intervenor's charge were unsuccessful.   The EEOC and Plaintiff-Intervenor were unable to secure from HWD a conciliation agreement acceptable to either of them.

16.     On December 7, 2016, the EEOC issued a Notice of Failure of Conciliation to HWD.

17.     By virtue of Plaintiff-Intervenor's charge, the EEOC's subsequent investigation, and the parties' conciliation efforts, HWD was on notice of the EEOC's and/or Plaintiff-Intervenor's intention to file a lawsuit against it containing allegations of class-wide unlawful employment practices.

18.     On August 16, 2017, the EEOC commenced an enforcement action against HWD through the initiation of this litigation.

19.     All conditions precedent to the filing of Plaintiff-Intervenor's Complaint have been fulfilled and this Complaint is timely filed.

## V.  Allegations Applicable to All Claims

20.     From at least January 2012 until approximately August 2014, HWD used an online employment application whereby applicants could access and submit an application online.  Applicants could also access and print out the online employment application and submit the completed form by facsimile to HWD's corporate office in Purcell, Oklahoma.

21.     A true and accurate copy of HWD's online employment application used from at least January 2012 until approximately August 2014 is attached hereto as Exhibit 1.

22.     A hard-copy, paper-based form of HWD's job application used during the

-4-

referenced time period was substantially the same as the online application.

23.    A true and accurate copy of HWD's hard-copy, paper-based employment application used from at least January 2012 until approximately August 2014 is attached hereto as Exhibit 2.

24.    HWD's online employment application, in its "Occupational Health Confidential Pre-Placement Health Assessment" section, contains questions requesting information about the applicant's family health history and personal medical history, as follows:

- Birth Date

- Age

- Family Health History (including check boxes for various specific conditions, including asthma, diabetes, neurological disorders or epilepsy, blood disorders, cancer, heart disease, strokes, kidney disease, and high blood pressure suffered by any "near relative")

- Are you Currently Under a Doctor's Care? (with box for explanation if Yes)

- Are You Currently Taking Prescription Drugs? (with box for explanation if Yes)

- Do You Currently Have Any Problems Related To: (including check boxes for various specific conditions, including but not limited to eye or vision defects, ear or hearing defects, epilepsy, convulsions, chest pain, arthritis, heart trouble, high blood pressure, anemia, diabetes, and other illness, injury, health complaint and box to explain All Yes Answers)

- Give Dates, Types of Illnesses or Injuries, and if Any Lasting Effects (with box for details)

25.    The hard-copy, paper-based form of HWD's job application also contains an "Occupational Health Confidential Pre-Placement Health Assessment" section, with questions requesting virtually the same family health history and personal medical history information as does the online application.

-5-

26.     Upon information and belief, during the period January 1, 2012 through June 30, 2014, HWD received applications from 3,289 job applicants using the HWD employment applications more fully described above.   Each of the applications contained the "Occupational Health Confidential Pre-Placement Health Assessment" section as described above.

27.     Plaintiff-Intervenor was one such applicant.   On or about January 11, 2013, Plaintiff-Intervenor applied for employment with HWD by completing HWD's online application and electronically submitting it to HWD.

28.     On January 11, 2013, following its receipt of Plaintiff-Intervenor's application for employment, HWD ran a background check on Plaintiff-Intervenor.

29.     HWD's background check on Plaintiff-Intervenor, done on January 11, 2013, included a statewide workers' compensation claims search for claims in Texas and Louisiana.

30.     Upon information and belief, during the period January 1, 2012 through June 30, 2014, HWD conducted workers' compensation claim searches on the 3,289 job applicants from whom it received applications for employment.

31.     On February 6, 2013, Plaintiff-Intervenor was interviewed at HWD's offices in Purcell, Oklahoma.

32.     On February 6, 2013, immediately following the interview, HWD offered Plaintiff-Intervenor a drilling rig job as a derrickhand.   Plaintiff-Intervenor accepted the position.

33.     On February 7, 2013, Plaintiff-Intervenor completed HWD's new employee orientation in HWD's corporate offices in Purcell, Oklahoma.

34.     On February 7, 2013, immediately following completion of the new employee orientation process, Plaintiff-Intervenor went to work for HWD.   He worked as a derrickhand with a rig crew under the supervision of Doug Heflin at HWD's yard in Purcell, Oklahoma.

35.    After commencing work on February 7, 2013, and at all times thereafter, Plaintiff-Intervenor satisfactorily performed the duties of his job with HWD.

36.    On February 11, 2013, after Plaintiff-Intervenor had worked as a derrickhand for HWD for several days, he was nevertheless required by HWD to undergo a medical examination and a lift test.

37.    Plaintiff-Intervenor passed the lift test.  The note reflecting the lift test result said Plaintiff-Intervenor demonstrated the ability to perform heavy work as defined by the *Dictionary of Occupational Titles*.

38.    On February 11, 2013, Dr. Kevin Pennwell conducted a medical examination of Plaintiff-Intervenor and prepared a report.

39.    As part of the medical examination, Dr. Pennwell took Plaintiff-Intervenor's blood pressure and recorded the information on his report.

40.    Dr. Pennwell's report indicates "normal" findings on all of the medical examination bodily systems/parts listed on the report.

41.    Dr. Pennwell checked the box "Candidate is medically qualified to perform the job described."

42.    A true and accurate copy of the report completed by Dr. Pennwell is attached hereto as Exhibit 3.

43.    On February 11, 2013, Dr. Pennwell's report on Plaintiff-Intervenor's medical examination was transmitted by facsimile to HWD's corporate offices in Purcell, Oklahoma.

44.    On February 11, 2013, after successfully completing the lift test and medical examination, Plaintiff-Intervenor returned to HWD's yard in Purcell, Oklahoma and resumed working as a derrickhand.

45.    At some point following Plaintiff-Intervenor's resumption of work on February 11, 2013, his immediate supervisor, Mr. Heflin, met with him in the HWD yard in follow-up

about the medical examination done earlier in the day.

46.     Notwithstanding that Plaintiff-Intervenor had been declared by Dr. Pennwell to be "medically qualified to perform the job described," Mr. Heflin told Plaintiff-Intervenor he was being terminated because of his high blood pressure.

47.     On February 11, 2013, Mr. Heflin executed an HWD termination form concerning Plaintiff-Intervenor.  The HWD termination form, signed by Mr. Heflin, states that Plaintiff-Intervenor had been terminated because he was "unable to perform duties within first 90 days."

48.     A true and accurate copy of the HWD termination form executed by Mr. Heflin on February 11, 2013 is attached hereto as Exhibit 4.

49.     In fact, at all times during his employment with HWD, Plaintiff-Intervenor was able to perform his job duties.

## VI.  Statement of Claims

### First Claim

#### ADAAA - Unlawful Post-Employment Medical Examination
(as to Plaintiff-Intervenor only)

50.     Plaintiff-Intervenor repeats and realleges each and every allegation contained in the foregoing of this Complaint as though set forth at length herein and further alleges:

51.     HWD violated the ADAAA, 42 U.S.C. § 12112(d)(4)(A) by requiring Plaintiff-Intervenor to undergo a post-employment medical examination without first having a reasonable belief based on objective evidence that a medical condition would impair Plaintiff-Intervenor's ability to perform essential job functions.

52.     As a result of HWD's violation of the ADAAA's prohibition of an unjustified post-employment medical examination, Plaintiff-Intervenor suffered actual damage, including but not limited to inconvenience, embarrassment, worry, mental distress, and loss of enjoyment of life.

53.     The actions of HWD were undertaken willfully, intentionally, and with malice and/or with reckless disregard for the rights of Plaintiff-Intervenor, thereby warranting an award of punitive damages.

## Second Claim

### ADAAA - Disability Discrimination/Unlawful Termination
### (as to Plaintiff-Intervenor only)

54.     Plaintiff-Intervenor repeats and realleges each and every allegation contained in the foregoing paragraphs of this Complaint as though set forth at length herein and further alleges:

55.     At the time HWD terminated Plaintiff-Intervenor's employment, Plaintiff-Intervenor was a person with a disability within the meaning of 42 U.S.C. § 12102(2) in that: (a) he had a physical or mental impairment that substantially limited him in at least one major life activity; and/or (b) HWD regarded him as having a physical impairment.

56.     With respect to the HWD job held by Plaintiff-Intervenor, he was a qualified individual with a disability within the meaning of 42 U.S.C. § 12102(8) in that he was able to perform the essential functions of the position either with or without a reasonable accommodation.

57.     Plaintiff-Intervenor's disability and/or HWD's regard about Plaintiff-Intervenor's physical impairment was a substantial and/or motivating factor in its decision to discharge him from his employment.

58.     HWD's decision to discharge Plaintiff-Intervenor from his employment constitutes unlawful discrimination in violation of the ADAAA, 42 U.S.C. § 12112(a).

59.     As a result of HWD's actions, Plaintiff-Intervenor has lost wages and benefits. Plaintiff-Intervenor has also suffered mental anguish, embarrassment, physical and emotional distress, and loss of enjoyment of life as a result of HWD's unlawful conduct.

60.     The actions of HWD were undertaken willfully, intentionally, and with malice

and/or with reckless disregard for the rights of Plaintiff-Intervenor, thereby warranting an award of punitive damages.

### Third Claim

### ADAAA - Unlawful Inquiry – Medical Questions
### (as to Plaintiff-Intervenor and Class of Applicants)

61.    Plaintiff-Intervenor repeats and realleges each and every allegation contained in the foregoing paragraphs of this Complaint as though set forth at length herein and further alleges:

62.    HWD violated the ADAAA, 42 U.S.C. § 12112(d)(2)(A), by asking Plaintiff-Intervenor and 3,288 other job applicants during the period January 1, 2012 through June 30, 2014, medical questions before making a job offer to them, and the medical questions asked by HWD elicited, or were likely to elicit, information about a disability or the severity of an applicant's impairments.

63.    As a result of HWD's violation of the ADAAA's prohibition of pre-offer medical inquiries, Plaintiff-Intervenor and 3,288 other job applicants during the period January 1, 2012 through June 30, 2014, have suffered actual damage, including but not limited to inconvenience, embarrassment, worry, mental distress, and loss of enjoyment of life.

64.    Plaintiff-Intervenor and the 3,288 other HWD job applicants during the period January 1, 2012 through June 30, 2014 have been damaged by HWD's violation of the ADAAA and, pursuant to 42 U.S.C. § 1981a, Plaintiff-Intervenor and the class seek compensatory damages in an amount to be determined at trial and injunctive relief.

65.    Alternatively, in order to provide complete relief and effectuate the purposes of the ADAAA's prohibition of pre-offer medical inquiries, Plaintiff-Intervenor and the 3,288 other job applicants during the period January 1, 2012 through June 30, 2014, seek an award of nominal damages as equitable relief under the ADAAA pursuant to 42 U.S.C. §

12117(a), which incorporates by reference 42 U.S.C. § 2000e-5(g)(1).

66.     HWD's violation of the ADAAA's prohibition of pre-offer medical inquiries was undertaken willfully, intentionally, and with malice and/or with reckless disregard for the rights of Plaintiff-Intervenor and the 3,288 other job applicants, thereby warranting an award of punitive damages.

### Fourth Claim

### GINA - Unlawful Inquiry – Genetic Information/Family Medical History
### (as to Plaintiff-Intervenor and Class of Applicants)

67.     Plaintiff-Intervenor repeats and realleges each and every allegation contained in the foregoing paragraphs of this Complaint as though set forth at length herein and further alleges:

68.     HWD violated GINA, 42 U.S.C. § 2000ff-1, by asking Plaintiff-Intervenor and 3,288 other job applicants during the period January 1, 2012 through June 30, 2014, to disclose genetic information, including family medical history, as part of HWD's job application process.

69.     As a result of HWD's violation of GINA's prohibition against asking for family medical history or other genetic information, Plaintiff-Intervenor and 3,288 other job applicants during the period January 1, 2012 through June 30, 2014, have been made to suffer actual damage, including but not limited to inconvenience, embarrassment, worry, mental distress, and loss of enjoyment of life.

70.     Plaintiff-Intervenor and the 3,288 other job applicants during the period January 1, 2012 through June 30, 2014, have been damaged by HWD's violation of GINA and, pursuant to 42 U.S.C. § 1981a, Plaintiff-Intervenor and the class seek compensatory damages in an amount to be determined at trial and injunctive relief.

71.     Alternatively, in order to provide complete relief and effectuate the purposes of GINA's prohibition of employers' seeking genetic information, including family medical

history, from job applicants, Plaintiff-Intervenor and the 3,288 other job applicants during the period January 1, 2012 through June 30, 2014, seek an award of nominal damages as equitable relief under GINA pursuant to 42 U.S.C. § 2000ff-6(a), which incorporates by reference 42 U.S.C. § 2000e-5(g)(1).

72.    HWD's violation of GINA's prohibition against asking for family medical history and other genetic information was undertaken willfully, intentionally, and with malice and/or with reckless disregard for the rights of Plaintiff-Intervenor and the 3,288 other job applicants, thereby warranting an award of punitive damages.

### Fifth Claim

#### ADAAA - Unlawful Inquiry - Workers' Comp Background Searches
#### (as to Plaintiff-Intervenor and Class of Applicants)

73.    Plaintiff-Intervenor repeats and realleges each and every allegation contained in the foregoing paragraphs of this Complaint as though set forth at length herein and further alleges:

74.    HWD violated the ADAAA, 42 U.S.C. § 12112(d)(2)(A), by conducting workers' compensation background searches on Plaintiff-Intervenor and 3,288 other job applicants during the period January 1, 2012 through June 30, 2014, and doing so before making a conditional offer of employment to them.

75.    HWD's pre-offer practice of conducting workers' compensation background searches on job applicants elicited, or was likely to elicit, information about a disability or the severity of an applicant's impairments. HWD's practice deprived job applicants of equal employment opportunities with HWD and/or otherwise adversely affected their status as an applicant for employment.

76.    In order to provide complete relief and effectuate the purposes of the ADAAA's prohibition of pre-offer workers' compensation background searches, Plaintiff-Intervenor and the 3,288 other job applicants during the period January 1, 2012 through June

30, 2014, seek an award of nominal damages as equitable relief under the ADAAA pursuant to 42 U.S.C. § 12117(a), which incorporates by reference 42 U.S.C. § 2000e-5(g)(1).

77.    HWD's violation of the ADAAA's prohibition of pre-offer workers' compensation background searches was undertaken willfully, intentionally, and with malice and/or with reckless disregard for the rights of Plaintiff-Intervenor and the 3,288 other job applicants, thereby warranting an award of punitive damages.

## CLASS ACTION ALLEGATIONS

78.    With respect to the above-alleged ADAAA and GINA unlawful inquiry claims (Claims III, IV and V), Plaintiff-Intervenor brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of himself and the other 3,288 job applicants during the period January 1, 2012 through June 30, 2014, who applied to HWD using HWD's unlawful employment application and who were subjected to unlawful pre-offer workers' compensation background searches.

79.    The members of the Class are so numerous that joinder of all members is impracticable.  Through the EEOC investigation that followed the filing of Plaintiff-Intervenor's charge, this lawsuit encompasses approximately 3,289 potential class members who, during the period January 1, 2012 through June 30, 2014, applied for employment with HWD by using HWD's employment application (as more fully described above).  The proposed class can be identified and located using HWD job application records and EEOC charge file documents and records.  Class members may be informed of the pendency of this Class Action by direct mail.

80.    Plaintiff-Intervenor's ADAAA unlawful inquiry/workers' compensation background search claims and GINA unlawful inquiry claim are typical of the claims of the members of the Class as all members of the Class are similarly affected by HWD's unlawful conduct in violation of the ADAAA and GINA, as is complained of herein.

81. Plaintiff-Intervenor will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in employment litigation. Plaintiff-Intervenor has no interests antagonistic to or in conflict with those of the Class.

82. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a.  Whether HWD, through its job application, as more fully described above and attached as Exhibits 1 and 2, asked Class members medical questions before making a job offer to them;

b.  Whether HWD's pre-offer medical questions to Class members elicited, or were likely to elicit, information about a disability;

c.  Whether HWD, through its job application, asked Class members to disclose genetic information about themselves or a family member;

d.  Whether HWD's use of its job application, as more fully described above, violated the ADAAA and/or GINA;

e.  Whether HWD conducted worker's compensation searches in connection with Class members' job application and did so before making a job offer to them;

f.  Whether HWD's pre-offer workers' compensation searches in connection with Class members' job application elicited, or was likely to elicit, information about a disability or the severity of an applicant's impairments.

g.  Whether Plaintiff-Intervenor and the Class members have sustained damages and, if so, what is the proper measure of damages.

83. A class action is superior to all other available methods of adjudicating this controversy since joinder of all Class members is impracticable. In order to provide complete relief to all Class members and to effectuate the purposes of the ADAAA's

-14-

prohibition of pre-offer medical inquiries/workers' compensation background searches, a class action is superior to all other available methods of adjudication.

84.     Similarly, in order to provide complete relief to all Class members and to effectuate the purposes of GINA's prohibition of employers' seeking genetic information, a class action is superior to all other available methods of adjudication.

85.     Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.

**WHEREFORE**, Plaintiff-Intervenor, Wilbert Glover, individually with respect to Claims I and II, and individually and on behalf of all others similarly situated with respect to Claims III, IV and V, respectfully prays for judgment against Defendant, Horizontal Well Drillers, LLC, and further prays:

(1)     that this Court award Plaintiff-Intervenor all his actual damages, including lost past compensation and lost past benefits in an amount to be determined at trial due to the Defendant's wrongful conduct pertaining to Claims I and II herein;

(2)     that this Court order Plaintiff-Intervenor reinstated to his former position or award him front pay in lieu of reinstatement due to Defendant's wrongful conduct pertaining to Claims I and II herein;

(3)     that this Court award Plaintiff-Intervenor damages to compensate for his mental, emotional, and physical distress and suffering sustained as a result of Defendant's wrongful conduct pertaining to Claims I and II herein;

(4)     that this Court award Plaintiff-Intervenor punitive damages against Defendant for Defendant's wrongful conduct pertaining to Claims I and II herein;

(5)     that this Court enter declaratory judgment pursuant to 28 U.S.C. § 2201(a) that Defendant's pre-offer medical inquiries violates the ADAAA, 42 U.S.C. § 12112(d)(2)(A);

(6)     that this Court enter declaratory judgment pursuant to 28 U.S.C. § 2201(a) that Defendant's requests for genetic information, including family medical history, violates GINA, 42 U.S.C. § 2000ff-1;

(7)     that this Court enter declaratory judgment pursuant to 28 U.S.C. § 2201(a) that Defendant's pre-offer workers' compensation background searches violates the ADAAA, 42 U.S.C. § 12112(d)(2)(A);

(8)     that this Court award Plaintiff-Intervenor and Class members damages to compensate for the mental and/or emotional distress, including but not limited to their inconvenience, embarrassment, worry, mental distress, and loss of enjoyment of life, sustained as a result of Defendant's unlawful conduct pertaining to Claims III, IV and V herein;

(9)     that this Court, because of Defendant's wrongful conduct pertaining to Claims III, IV and V herein, award Plaintiff-Intervenor and Class members nominal damages as equitable relief under the ADAAA and/or GINA in order to provide complete relief and effectuate the purposes of the ADAAA and/or GINA;

(10)     that this Court, because of Defendant's intentional, willful, malicious and reckless conduct pertaining to Claims III, IV and V herein, award Plaintiff-Intervenor and Class members punitive damages;

(11)     that this Court enjoin Defendant from discriminating on the basis of disability in its employment practices;

(12)     that this Court enjoin Defendant from making pre-employment medical inquiries, conducting pre-offer workers' compensation background searches, and requesting genetic information in violation of the ADAAA and GINA;

(13)     that this Court award Plaintiff-Intervenor and Class members all appropriate prejudgment and post-judgment interest as provided by law;

(14)   that this Court award Plaintiff-Intervenor his reasonable attorney fees and costs expended in the prosecution of all claims in this action; and

(15)   that this Court award Plaintiff-Intervenor and Class members such other and further equitable relief as may be deemed just and proper by the Court.

Respectfully submitted,

**SHOOK & JOHNSON, P.L.L.C.**

By:   **s/ Jonathan E. Shook**
**Jonathan E. Shook, OBA #17343**
**7420 S. Yale Ave.**
**Tulsa, Oklahoma 74136**
**(918) 293-1122 - _Telephone_**
**(918) 293-1133 - _Facsimile_**
**jshook@shookjohnson.com**

**Attorney for Plaintiff-Intervenor,**
**Wilbert Glover**

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of October 2017, I electronically transmitted the attached document to the Clerk of the Court and using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Jeff A. Lee
jeff.lee@eeoc.gov

Emily A Keatley
emily.keatley@eeoc.gov

Jo Anne Deaton
jdeaton@rhodesokla.com

Denelda L Richardson
drichardsoncourts@rhodesokla.com

Michael P Robertson
mrobertson@rhodesokla.com

s/ Jonathan E. Shook
Jonathan E. Shook

-17-