# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| and | ) |
| | ) |
| WILBERT GLOVER, individually, and on behalf of all others similarly situated, | ) |
| | ) |
| Plaintiff-Intervenor, | ) |
| | ) |
| v. | ) Case No. CIV-17-879-R |
| | ) |
| HORIZONTAL WELL DRILLERS, LLC, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Before the Court are Defendant's Motion to Dismiss Claims 1–5 of Plaintiff's Amended Complaint (Doc. 12) and Motion to Dismiss Class Action Claims 3–5 of Plaintiff-Intervenor's Complaint (Doc. 24). The EEOC brought eight claims in August, 2017, under the Americans with Disabilities Act, Genetic Information Non-Discrimination Act, Age Discrimination in Employment Act, and the Civil Rights Acts of 1964 and 1991, after which former employee Wilbert Glover intervened with two related individual claims and three class action claims. The Court hereby dismisses Glover's Claim 5 as duplicative of the EEOC's Claim 3 and otherwise denies the motions for the reasons set forth herein.

## I. Background

The Court accepts as true the following facts from Plaintiff's Amended Complaint (Doc. 4) and Plaintiff-Intervenor's Complaint (Doc. 17).

1

## A. HWD Employment Practices

Plaintiff-Intervenor Wilbert Glover applied for a derrickhand drilling position with HWD on January 11, 2013. Doc. 4-2. The application—used by 3,289 job applicants from January 1, 2012, through June 30, 2014—solicited information on age, family and personal health history, doctors' care status, prescription drug use, and current health issues. Doc. 4-1; Doc. 17, at 5–6. Before it scheduled an interview with Glover, HWD engaged a third-party vendor to perform a workers' compensation background search on him, just as it did with all applicants during this period. Doc. 4, at 6; Doc. 17, at 6. HWD preferred to hire applicants without a history of workers' compensation injuries or claims, and it destroyed the applications for those whom its CEO declined to interview. Doc. 4, at 6.

On February 6, 2013, HWD interviewed Glover and offered him a job, conditional on answering questions about his workers' compensation and disability history. Doc. 4-3; Doc. 17, at 6. Glover began working for HWD the next day. Doc. 17, at 6–7. Consistent with company policy, HWD subjected him to a new-hire medical exam on February 11. Doc. 4-4. HWD's doctor found that Glover was "medically qualified to perform the job described." Doc. 17, at 7. Furthermore, Glover satisfactorily performed his job responsibilities. Doc. 4-4. Even so, HWD terminated his employment shortly following the exam for failure "to perform duties within first 90 days." Doc. 4-5; Doc. 17, at 7–8. Glover's supervisor admitted that the termination was because of his high blood pressure. Doc. 17, at 8.

HWD allegedly discriminated against other applicants as well based on disability status and age. Mr. Stephan Mayfield applied for a drilling rig position with HWD in 2013. Doc. 4, at 7–8. He had four years of relevant experience, but indicated on his application

that he had suffered a work-related injury and received worker's compensation payments. *Id.* at 8. That injury did not affect his ability to work for HWD, but HWD never interviewed him for a position. *Id.* Kurt Branch applied for a position in early 2012 and indicated on his application that he was over forty years old at the time he applied. *Id.* at 7. Despite approximately twenty-one years of relevant experience, HWD did not hire him. *Id.* Similarly, James Cargal applied for a position in 2012 and 2017 to no avail. Cargal had four to five years of relevant experience and indicated he was over forty years old. *Id.*

## B. EEOC Investigations

Plaintiff-Intervenor Wilbert Glover filed a charge of discrimination with the EEOC on or about April 1, 2013. Doc. 4, at 4; Doc. 24-2. He alleged that his termination and post-offer medical exam violated the Americans with Disabilities Act ("ADA"). *Id.* Moreover, Glover alleged violations of the Genetic Information Nondiscrimination Act ("GINA") because HWD forced him to submit genetic information in the employment application and pre-offer questions. *Id.* The EEOC's Oklahoma City ("OKC") Office notified HWD of Glover's charge on April 1, 2013, and requested information and records relevant to the charge of discrimination and similar conduct during the relevant period—January 1, 2012, through March 31, 2013. Docs. 29-1, 29-2. It then issued to HWD a "Notice of Expanded Investigation and Request for Additional Info" regarding Glover's charge on October 1, 2014. Doc. 29-10. "[T]he scope of the [EEOC's] investigation of [the] Charge has been expanded to include all applicants (hired and not hired) during the relevant time period which has also been extended to at least" June 30, 2014—when HWD removed from its application "Applicant and Family Health, Worker's Compensation, and Disability Pension

history questions." Doc. 29-10, at 1. The EEOC issued its letter of determination on February 3, 2016, finding reasonable cause to believe that HWD violated the ADA, GINA, and Title VII. Doc. 4, at 4. On December 7, 2016, following a conciliation conference between the EEOC, HWD, and Glover, the EEOC's OKC Office issued a notice of conciliation failure regarding Glover's charge under the ADA and GINA. Doc. 17, at 4.

On December 4, 2014, the EEOC's St. Louis Office initiated a charge against HWD, this time under the Age Discrimination in Employment Act ("ADEA"). Doc. 4, at 4. The EEOC's OKC Office issued a letter of determination about two years later, finding reasonable cause to believe that HWD violated the ADEA. *Id.*

### C. EEOC's Amended Complaint

On August 16, 2017, Plaintiff EEOC brought the following claims:

(1) ADEA Failure to Hire: Since at least January 2012, HWD subjected applicants, including Kurt Branch and James Cargal, to a pattern or practice of discriminatory failure to hire based on age that violated the ADEA, 29 U.S.C. § 623(a);

(2) ADA Failure to Hire: Since at least January 2012, HWD used applicants' workers' compensation history that it gathered to subject them, including Stephan Mayfield, to a pattern or practice of discriminatory failure to hire based on disability that violated the ADA, 42 U.S.C. § 12112(a);

(3) ADA Unlawful Disability-Related Inquiry: Since at least January 2012, HWD conducted workers' compensation background searches on applicants that violated the ADA, 42 U.S.C. § 12112(d)(2)(A);

(4) ADA and GINA Failure to Maintain Confidentiality: Since at least January 2012, HWD failed to separate its employees' and applicants' medical information in violation of the ADA, 42 U.S.C. § 12112(d)(3)(B) and (4)(C), and the GINA, 42 U.S.C. § 2000ff-5;

(5) ADA Failure to Retain Records: Since at least January 2012, HWD failed to preserve records relevant to unlawful employment practices and destroyed employment applications and historic applicant data in violation of the ADA, 42 U.S.C. § 12117(a);

(6) ADA Unlawful Medical Exam: On February 11, 2013, HWD's doctor performed a post-hire medical exam on Glover that violated the ADA, 42 U.S.C. § 12112(d)(3);

(7) ADA Termination: On February 11, 2013, HWD terminated Glover because it regarded him as disabled in violation of the ADA, 42 U.S.C. § 12113(a);

(8) Title VII Failure to File EEO-1 Reports: Since at least January 2012, HWD, an employer of over 100 employees, failed to create, maintain, and file EEO-1 reports in violation of 42 U.S.C. §§ 2000e-8, 2000ff-6, 12117, and 29 C.F.R. § 1602.7.

Doc. 4, at 8–16. Defendant moved to dismiss Claims 1–5 on October 23, 2017. Doc. 12.

**D. Plaintiff-Intervenor Glover's Complaint**

On October 23, 2017, Glover intervened in this action as a matter of right. *See* Docs. 6, 8. He then filed his complaint on October 27, alleging:

(1) ADA Unlawful Medical Exam: On February 11, 2013, HWD's doctor performed a post-employment medical exam on Glover that violated the ADA, 42 U.S.C. § 12112(d)(4)(A);

5

(2) ADA Termination: On February 11, 2013, HWD terminated Glover because it regarded him as disabled in violation of the ADA, 42 U.S.C. § 12113(a);

(3) ADA Unlawful Medical Inquiry: From January 1, 2012, through June 30, 2014, HWD asked Glover and 3,288 other applicants medical questions that elicited disability information in violation of the ADA, 42 U.S.C. § 12112(d)(2)(A);

(4) GINA Unlawful Family Medical History Inquiry: From January 1, 2012, to June 30, 2014, HWD requested genetic information, including family medical history, from Glover and 3,288 other applicants in violation of the GINA, 42 U.S.C. § 2000ff-1;

(5) ADA Unlawful Disability-Related Inquiry: From January 1, 2012, through June 30, 2014, HWD conducted workers' compensation background searches on Glover and 3,288 other applicants before extending conditional offers that violated the ADA, 42 U.S.C. § 12112(d)(2)(A);

Doc. 17, at 8–13. Glover brings Claims 1 and 2 individually and Claims 3 through 5 as a class action under Rule 23(a) and (b)(3) on behalf of "himself and the other 3,288 job applicants during the [relevant] period" who allegedly applied to HWD with the unlawful application and were subjected to unlawful pre-offer workers' compensation searches. *Id.* at 13–15. Defendant moved to dismiss Claims 3–5 on November, 2017. Doc. 24.

## II. Discussion

Defendant raises various arguments for dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). In a 12(b)(1) motion for lack of subject-matter jurisdiction due to failure to exhaust administrative remedies, plaintiff has the burden to show jurisdiction. *McBride v. CITGO Petroleum Corp.*, 281 F.3d 1099, 1106 (10th Cir. 2002). A

complaint may also be dismissed under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." Dismissal is proper "if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the non-moving party, the complaint does not contain 'enough facts to state a claim to relief that is plausible on its face.'" *MacArthur v. San Juan County,* 497 F.3d 1057, 1064 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)); *see Ashcroft v. Iqbal*, 556 U.S. 662, 676–80 (2009).

The Court considers Defendant's exhaustion argument against Glover's Claims 3–5 under Rule 12(b)(1) and the rest under 12(b)(6). *See Barrett v. Rumsfeld*, 158 F. App'x 89, 91 (10th Cir. 2005)*; McBride*, 281 F.3d at 1106.

## A. Exhaustion

Defendant argues that Glover failed to exhaust administrative remedies before the EEOC regarding his class action Claims 3–5, which allege that HWD violated the ADA and GINA by conducting improper medical inquiries and workers' compensation searches into a class of applicants. The argument concerns Glover's failure to indicate in his charge that he intended to represent a class. "A plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007) (quoting *MacKenzie v. City & Cty. of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005)). The Court finds that Glover's Claims 3–5 are within the scope of an investigation "that can reasonably be expected to follow" Glover's charge. *Id.*

ADA and GINA claims, like those under Title VII, require exhaustion of administrative remedies prior to bringing suit in federal court. *See McBride*, 281 F.3d at 1105; 42 U.S.C. § 2000ff-6(a)(1). To satisfy exhaustion, an employee must file a timely discrimination charge with the EEOC. *See* 42 U.S.C. § 2000e-5. This rule "is intended to protect employers by giving them notice of the discrimination claims being brought against them, in addition to providing the EEOC with an opportunity to conciliate the claims." *Foster v. Ruhrpumpen, Inc.*, 365 F.3d 1191, 1195 (10th Cir. 2004).[1] Once the EEOC receives a charge, it can investigate information "that relates to unlawful employment practices . . . relevant to the charge under investigation." 42 U.S.C. § 2000e–8(a) (emphasis added). "Courts have given broad construction to the term 'relevant' and have traditionally allowed the EEOC access to any material that 'might cast light on the allegations against the employer.'" *E.E.O.C. v. Kronos Inc.*, 620 F.3d 287, 296 (3d Cir. 2010) (quoting *EEOC v. Shell Oil Co.*, 466 U.S. 54, 68–69 (1984)); *see also Gen. Tel. Co. of the Nw. v. Equal Employment Opportunity Comm'n*, 446 U.S. 318, 331 (1980). "[B]ecause failure to exhaust administrative remedies is a bar to subject matter jurisdiction, the burden is on the plaintiff as the party seeking federal jurisdiction to show, by competent evidence, that she did exhaust." *McBride*, 281 F.3d at 1106.

---

[1] Defendant also cites *Foster v. Ruhrpumpen, Inc.*, 365 F.3d 1191, 1198–99 (10th Cir. 2004), for the proposition that "an individual who has not filed [an] EEOC Charge can opt-in to [a] suit filed by [a] similarly situated plaintiff and be excused from the individual exhaustion requirement where [the] EEOC Charge actually filed gave employer notice of collective or class-wide nature of charge." Doc. 24, at 16. This issue in *Foster* regarding the governing Tenth Circuit test for the "single filing rule"—which is either the "broadest test" that requires the claims of the administrative claimant and the subsequent plaintiff to arise out of the same circumstances and time frame, or the "somewhat narrower test" that "requires that the administrative claim give notice that the discrimination is 'class-wide'"—is not yet before the Court because it is unclear whether class members will need to invoke the single filing exception to Section 706. *Foster*, 365 F.3d at 1197–98 (citing *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1110 (10th Cir. 2001)).

Plaintiff-Intervenor Glover filed a charge with the EEOC "[o]n or about April 1, 2013."[2] Doc. 4, at 4; Doc. 24-2.[3] He alleged that his termination and post-offer medical exam violated the ADA. Moreover, Glover alleged GINA violations because HWD forced him to submit personal and family medical history in the application and pre-offer questions. The EEOC notified HWD of Glover's charge and requested information and records relevant to the charge and similar conduct during the relevant period. Doc. 29-2. The notice specified that Glover sought relief individually and not "on Behalf of Other(s)." Doc. 29-1, at 1.

Despite this initial statement, the EEOC alerted HWD to the Glover investigation's class-based scope multiple times before issuing a letter of determination. On April 30, 2014, the EEOC requested additional information on HWD's hiring policies, methods for screening and recruiting, and records of everyone hired and not hired from the applicant pool. Doc. 29-3, at 3–4. The EEOC requested information again on August 19, 2014. Doc. 29-7. HWD received and complied with both requests. Docs. 29-5, 29-9. On October 1, 2014, the EEOC's OKC Office issued HWD a "Notice of Expanded Investigation and Request for Additional Info" regarding the Glover charge. Doc. 29-10. "[T]he scope of the Commission's investigation of [Glover's] Charge has been expanded to include all

---

[2] It appears that Glover may have filed a charge in early March, 2013, but the EEOC's "received" stamp on Glover's "Intake Information/Charge of Discrimination" is unclear. *See Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389, 404 (2008); Doc. 24-2, at 3. Thus, until the parties present contrary evidence, the Court defers to the date in the complaint, April 1, 2013. *See* Doc. 4, at 4.

[3] "[A] party may go beyond allegations contained in the complaint" in a 12(b)(1) motion without "convert[ing] the motion to a Rule 56 motion." *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). The Court "has wide discretion to allow affidavits [and] other documents . . . to resolve disputed jurisdictional facts under Rule 12(b)(1). *Id.* To analyze this exhaustion issue, the Court considers Glover's charge (Doc. 24-2), the EEOC's notice to HWD of the charge (Doc. 29-1), EEOC requests for additional information (Doc. 29-3, 29-7), HWD's compliance with those requests (Docs. 29-5, 29-9), and the EEOC's "Notice of Expanded Investigation (Doc. 29-10), the authenticity of which is undisputed. *See Green v. Donahoe*, 760 F.3d 1135, 1140 (10th Cir. 2014), *vacated sub nom on other grounds, Green v. Brennan*, 136 S. Ct. 1769 (2016).

applicants (hired and not hired) during the relevant time period" when HWD "changed its employment application to remove Applicant and Family Health, Worker's Compensation, and Disability Pension history questions." Doc. 29-10, at 1. In other words, the EEOC conducted an investigation into Glover's charge and discovered that the allegations applied not just to Glover, but to a class of applicants.

As a preliminary matter, this showing satisfies Glover's burden to show exhaustion of his class claims. The scope of an EEOC investigation likely to follow a charge of improper employment application questions includes *who* was subjected to that application—Glover and other applicants—and *how* that information was used, in this case to conduct workers' compensation background searches. Claims 3–5 follow the scope of that reasonable investigation. Granted, Glover clearly styled his charge as an individual complaint, and in its notice to HWD of Glover's charge, the EEOC checked the box for individual "Claims To Be Aggrieved," indicating that it did not believe Glover was asserting class claims. Failure to check an appropriate box "creates a presumption that the charging party is not asserting claims represented by that box," but that presumption only seems to apply if the charging party is the one checking the box, not the EEOC. *Jones*, 502 F.3d at 1186. Nonetheless, even if the presumption does apply—or if the expected scope of Glover's individual-based charge was more limited than the conduct alleged in Glover's Claims 3–5—the Court is satisfied with the actual notice the EEOC provided to HWD of Glover's class action claims.

Defendant raises a line of Tenth Circuit cases starting with *Gulley v. Orr*, 905 F.2d 1383 (10th Cir. 1990), that heighten the exhaustion burden for class action claims. *Gully* held that "exhaustion of individual administrative remedies is insufficient to commence a

class action in federal court; rather, one of the named plaintiffs must have exhausted *class* administrative remedies." 905 F.2d at 1385 (emphasis added). Courts have interpreted *Gulley* to require the named plaintiff to express in the charge of discrimination an intent to represent a class. At first glance, the case precludes Glover's Claims 3–5 because he only charged individual claims.

Glover is correct that although the Tenth Circuit has not explicitly held so, *Gulley*'s class exhaustion rule applies only to suits against federal employers, not to his suit against a private employer. First, the holding was based on the Civil Service Commission's "distinct administrative mechanism created specifically to address class claims of discrimination," a series of "class administrative remedies, 29 C.F.R. §§ 1613.601–.643" —recodified in 1996 to 29 C.F.R. § 1614, *et seq.*—that exclusively govern federal employees.[4] *Id.* at 1384–85; *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997). Second, every case that the *Gulley* court cited for the "weight of authority" supporting its holding concerned discrimination suits against federal employers. *Gulley*, 905 F.2d at 1385; *see, e.g.*, *McIntosh v. Weinberger*, 810 F.2d 1411, 1423–25 (8th Cir. 1987), *vacated sub nom on other grounds*, *Turner v. McIntosh*, 487 U.S. 1212 (1988) ("These regulations and the administrative mechanism which they create are not a mere alternative means of resolving disputes between employee and *federal employer*.") (emphasis added); *Wade v. Sec'y of Army*, 796 F.2d 1369, 1373 (11th Cir. 1986) ("A *federal employee* plaintiff seeking to litigate class claims . . . in

---

[4] *See, e.g.*, 29 C.F.R. §§ 1614, 1614.101(a), 1614.204(a)(1) ("A class is a group of employees . . . adversely affected by an *agency* personnel management policy or practice") (emphasis added). The EEOC passed these regulations pursuant to its Title VII authority, 42 U.S.C. § 2000e–16, entitled "Employment by Federal Government."

federal court is required to have exhausted administrative remedies relating to class complaints.") (emphasis added); *Lewis v. Smith*, 731 F.2d 1535, 1540 (11th Cir. 1984). Third, the Tenth Circuit has only applied *Gulley* to federal employment suits. *See Ransom v. U.S. Postal Serv.*, 170 F. App'x 525, 528 (10th Cir. 2006) (unpublished); *Barrett v. Rumsfeld*, 158 F. App'x 89, 92 (10th Cir. 2005) (unpublished); *Monreal v. Potter*, 367 F.3d 1224, 1234 (10th Cir. 2004); *Persons v. Runyon*, 172 F.3d 879 (10th Cir. 1999); *Belhomme v. Widnall*, 127 F.3d 1214, 1217 (10th Cir. 1997) ("A *federal employee* must exhaust his class action claim with the EEOC before raising it in federal court . . . .") (emphasis added).

Defendant's arguments in its reply brief are not helpful. It cites a number of inapplicable district court opinions that apply *Gulley*'s exhaustion rule to private employees. These cases are distinguishable because they concerned charges that would not be expected to prompt class-wide investigations and the EEOC never provided notices of expanded investigations regarding class-based relief. *See* Doc. 29, at 12–13 (citing *Hernandez v. Unarco Indus.*, No. CIV-15-001-KEW, 2016 WL 1261085, at *3 (E.D. Okla. Mar. 30, 2016); *Bizzell v. Target Corp.*, No. CIV-05-0829-HE, 2007 WL 315358, at *2 (W.D. Okla. Jan. 31, 2007); *Maiahy v. Target Corp.*, No. CIV-03-1685-HE, 2006 WL 2811899, at *2 & n.7 (W.D. Okla. Sept. 28, 2006)). By contrast, Glover's charge prompted the EEOC's three-year investigation and expanded investigation notice. The charge also specifically mentioned HWD's application, one that it presumably used for all applicants in that period. Notwithstanding these differences, to the extent *Hernandez*, *Bizzell*, and *Maiahy* remain at odds with the Court's holding herein—particularly in the way they interpret *Gulley* and its progeny—the Court respectfully departs from them because they do not analyze the apparent

distinction between private- and federal-employee class exhaustion requirements. The same is true of the dicta in *Anderson v. Boeing Co.*, 222 F.R.D. 521, 544 (N.D. Okla. 2004).

On the other hand, the court in *Woodword v. Salazar*, 731 F. Supp. 2d 1178, 1189 n.9 (D. N. M. 2010), opined on private employees' exhaustion of class remedies that "there is nothing equivocal about the rulings in [the *Gulley*] cases—they clearly require exhaustion of class administrative remedies." It is unclear why the court reached this issue, given that the *Woodword* plaintiff brought her suit against a federal employer. Nonetheless, the Court disagrees for the reasons discussed above. The *Gulley* cases failed to grapple with this federal-private distinction because the litigants had no need to raise the issue—each plaintiff was a federal employee. Further, the *Woodword* court's argument that a rule allowing for exhaustion if the defendant "could reasonably foresee from the [charge] that a class action might lie . . . has no logical end-point" does not apply when the EEOC actually investigated Glover's charge as a class action and gave the employer requisite notice. *Id.* at 1189.

Next, Defendant mischaracterizes Glover's argument that HWD received notice of the class-based nature of his claims. Glover does not rely merely on "the EEOC['s] request[s for] additional information[] not sought in the original investigation." Doc. 31, at 8. He argues that the EEOC provided an explicit "Notice of Expanded Investigation" regarding class-wide discrimination—*in addition to* the prior requests for additional information—that put HWD on notice. Doc. 29-10. But Defendant believes that Glover's reliance on that "Notice of Expanded Investigation" is inconsistent with his argument against redundancy. Doc. 31, at 9–10. According to Defendant, Glover "cannot assert, on the one hand, that HWD received notice of his class claims through the EEOC investigation and, on the other hand,

that his claims are different from the class claims investigated by the EEOC." *Id.* at 10. That argument also misses the mark. Glover asserts that HWD received notice through the EEOC investigation, but he argues that his class claims are different from the *EEOC's claims*, not that they are different from "the class claims *investigated by the EEOC.*" *Id.* Glover's claims *are* duplicative of those "investigated by the EEOC," and one would certainly hope so—this is an inherent feature of exhaustion, not some sort of dismissal-for-redundancy flaw as Defendant contends.

Lastly, Defendant argues that Glover cannot meet his burden of proving jurisdiction because he has not cited a Tenth Circuit case establishing exhaustion of class remedies by a private employee whose charge did not expressly seek class-based relief. Doc. 31, at 4. That argument ignores the baseline exhaustion standard. The Tenth Circuit has consistently held that the test credits "the scope of the administrative investigation that can reasonably be expected to follow the charge." *Jones*, 502 F.3d at 1186; *see, e.g.*, *MacKenzie*, 414 F.3d at 1274; *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003); *Ingels v. Thiokol Corp.,* 42 F.3d 616, 625 (10th Cir. 1994). *But see Eisenhour v. Weber Cty.*, 744 F.3d 1220, 1227 (10th Cir. 2014).[5] Glover shows that not only do Claims 3–5 arise from an expected investigation of his charge of discrimination,[6] but HWD repeatedly received notice of the class-based

---

[5] Defendant points out that these cases deal mostly with exhaustion of individual claims, but the Court sees no reason to limit their force. *See* Doc. 31, at 5–6. Further, Defendant misstates the holding in *Eisenhour v. Weber Cty.*, 744 F.3d 1220, 1227 (10th Cir. 2014), which only replaced the "old [reasonably-related] test" as to conduct that occurred after an employee's charge of discrimination, an issue not before this Court. *See* Doc. 31, at 6.

[6] Defendant ignores the text of Glover's charge, which is not restricted to just the application's questions on "applicant family medical history information"—a GINA violation—but also to questions on "applicant . . . medical history information," a potential ADA violation. Doc. 24-2, at 2; *see* Doc. 31, at 6–7 & n.4. Although Glover did not cite the ADA in that particular sentence of his charge, he did check the "disability" box. *Id.* Requiring more of Glover would ignore the "liberal[] constru[ction]" afforded employees in drafting discrimination charges. *Jones*, 502 F.3d at 1186.

nature of the investigation before the EEOC's determination. In other words, Glover complied with the letter of the exhaustion standard and its purpose, to "protect employers by giving them notice of the discrimination claims being brought against them." *Foster*, 365 F.3d at 1195. Defendant argues for an exception to the rule—*Gulley* raises the burden to prove exhaustion—but the Court reads Tenth Circuit precedent as limiting that exception to federal employees. Thus, Glover's exhaustion showing remains intact.

## B. Time Bar

The Court moves next to Defendant's arguments for dismissal under Rule 12(b)(6).[7] Defendant raises a limitations defense to the EEOC's Claims 1 and 2 in order to bar recovery from EEOC class members who allege ADA failures to hire before June 5, 2012 and from members who allege ADEA failures to hire before February 7, 2014.[8] Doc. 12, at 13.

### 1. ADA Limitation

The ADA incorporates Title VII's "powers, remedies, and procedures," including the "time for filing charges" requirement in 42 U.S.C. § 2000e–5(e)(1) ("Section 706"). 42 U.S.C. § 12117. Section 706 states that a charge of discrimination "shall be filed . . . within three hundred days after the alleged unlawful employment practice occurred . . . ."[9] 42

---

[7] To avoid converting Defendant's motions to those for summary judgment, the Court has not considered the documents from its 12(b)(1) inquiry, *supra* Part II(A) n. 3, at 9, for 12(b)(6) purposes because they are not (1) "referred to in the complaint," (2) "central to . . . [P]laintiff's claim," and (3) "indisputably authentic." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). Further, the Court considers timeliness requirements "in the nature of statute of limitations," which "may be appropriately resolved on a [Rule] 12(b) motion when the dates given in the complaint make clear that the right sued upon has been extinguished." *Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221, 1228 (10th Cir. 1997); *Sierra Club v. Oklahoma Gas & Elec. Co.*, 816 F.3d 666, 671 (10th Cir. 2016) (quoting *Lee v. Rocky Mountain UFCW Unions & Emp'rs Tr. Pension Plan*, 13 F.3d 405, at *1 (10th Cir. 1993)). The dates in the complaint are undisputed and "make clear" which EEOC class members are affected by the 300-day timely filing window.

[8] Although the Court denotes some of the EEOC's claims as "class" claims, the EEOC is not bound by Rule 23. *See Gen. Tel. Co. of the Nw. v. Equal Employment Opportunity Comm'n*, 446 U.S. 318, 333–34 (1980).

[9] "The 300–day filing period applies in states in which the Equal Employment Opportunity Commission (EEOC) defers to the enforcement efforts of a state agency empowered to undertake employment discrimination

U.S.C. § 2000e–5(e)(1). "A claim is time barred if it is not filed within these time limits." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002); *Barrett v. Rumsfeld*, 158 F. App'x 89, 91 (10th Cir. 2005). Defendant therefore argues that for a class member to obtain relief through the EEOC's Claim 2, that individual must have experienced discrimination sometime within 300 days of Glover's charge, which was filed on or about April 1, 2013. Doc. 4, at 4. Three hundred days prior was June 5, 2012.

However, the EEOC seeks to recover on behalf of aggrieved individuals who allege a "pattern or practice of discriminatory failure to hire" in violation of the ADA "[s]ince at least January 2012" because the continuing violation doctrine, an equitable tolling exception, governs when Defendant's discriminatory pattern or practice "occurred." Doc. 4, at 9–10; 42 U.S.C. § 2000e–5(e)(1). Defendant argues that "pattern or practice" claims must be brought under Section 707, whereas the EEOC's claims only invoke Section 706. Thus, HWD's limitations defense begets three questions: (1) Can the EEOC pursue a pattern-or-practice claim for failure to hire under Title VII's Section 706? (2) Does the continuing violation doctrine apply to pattern-or-practice claims? (3) Does the EEOC's claim meet the characteristics of a continuing violation?

The EEOC succeeds on the first question. Section 706—which the EEOC relies on for its failure-to-hire claims—governs employment discrimination claims "filed by or on behalf of a person claiming to be aggrieved, or by [the EEOC]." 42 U.S.C. § 2000e-5(b). "[T]he purpose of the action [is] to terminate unlawful practices and to secure appropriate

investigations." *Boyer v. Cordant Techs., Inc.*, 316 F.3d 1137, 1139 (10th Cir. 2003). "Oklahoma is a deferral state." *Riley v. Tulsa Cty. Juvenile Bureau ex rel. Tulsa Cty. Bd. of Comm'rs*, 421 F. App'x 781, 783 (10th Cir. 2010). The filing period is therefore 300 days.

relief, including 'reinstatement or hiring . . . , with or without back pay,' for the victims . . . ." *Gen. Tel.*, 446 U.S. at 323–24 (quoting 42 U.S.C. § 2000e-5(g)). Congress amended Title VII in 1991 to allow the EEOC, as a Section 706 "complaining party," to also pursue compensatory or punitive damages. *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 287 (2002) (citing 42 U.S.C. § 1981a(a)(1)–(2), (d)(1)(A)–(B)). Section 707—which the EEOC does not invoke—authorizes only the EEOC to sue when it "has reasonable cause to believe that [an employer] is engaged in a pattern or practice of discrimination." 42 U.S.C. § 2000e-6(e). Section 707 limits the remedy for EEOC pattern-or-practice suits to equitable relief.[10] *See* 42 U.S.C. §§ 1981a(a)(1), 2000e–6(a). Moreover, 707 actions are designed to eradicate systemic, widespread discrimination. *See Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1106 (10th Cir. 2001).

While Congress intended Sections 706 and 707 to address different forms of discrimination with unique remedies, the two are not mutually exclusive, and the EEOC can also utilize a pattern-or-practice theory to recover for aggrieved individuals under Section 706. *Serrano v. Cintas Corp.*, 699 F.3d 884, 894 (6th Cir. 2012); *see Gen. Tel.*, 446 U.S. at 333 (internal quotations omitted) (discussing "the general intent to accord parallel or overlapping remedies against discrimination"). "[R]elevant Supreme Court precedent suggests that . . . the inclusion of the language in § 707 simply means that the scope of the EEOC's authority to bring suit is more limited when it acts pursuant to § 707." *Serrano*, 699 F.3d at 894.

---

[10] Section 707 does not expressly limit the "time for filing charges," but 707 actions must follow "the procedures set forth in" Section 706, which does contain a time limitation. 42 U.S.C. §§ 2000e-5(e)(1), 2000e-6(e).

The second question is a close one, but the Court agrees with the EEOC that it can utilize the continuing violation doctrine for pattern-or-practice claims.[11] In *Bruno*, the Tenth Circuit held that "[u]nder the continuing violation theory, a plaintiff who shows a continuing policy and practice that operated within the statutory period has satisfied the filing requirements." 829 F.2d at 961 (1987), *overruled on other grounds by Morgan*, 536 U.S. 101. Then in *Morgan*, the Supreme Court explicitly left open "the timely filing question with respect to 'pattern-or-practice' claims brought by private litigants." 536 U.S. at 115 n.9. In other words, it declined to address—just as the Tenth Circuit has done twice since *Morgan*— "whether the continuing violations doctrine applies to the pattern or practice method of proof." *Semsroth v. City of Wichita*, 304 F. App'x 707, 715 (10th Cir. 2008) (unpublished);[12] *see Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1186 n.3 (10th Cir. 2003) (citing *Morgan*,

---

[11] On this issue, district courts have offered "widely divergent analyses that are impossible to reconcile or even tidily summarize." *Equal Employment Opportunity Comm'n v. CRST Van Expedited, Inc.*, 615 F. Supp. 2d 867, 877 (N.D. Iowa 2009). Some have persuasively rejected the continuing violation doctrine's application and subjected EEOC pattern-or-practice claims to Section 706's timely filing requirement. *See, e.g.*, *E.E.O.C. v. FAPS, Inc.*, No. CIV-10-3095-JAP-DEA, 2014 WL 4798802, at *25–26 (D. N.J. Sept. 26, 2014); *E.E.O.C. v. Glob. Horizons, Inc.*, No. CIV-11-3045-EFS, 2012 WL 3095577, at *6–7 (E.D. Wash. July 27, 2012); *E.E.O.C. v. Freeman*, No. CIV-09-2573-RWT, 2010 WL 1728847, at *6 (D. Md. Apr. 27, 2010). Others have adopted the EEOC's approach, either because they found that Section 706 only limits private parties (not the EEOC), or because they found the continuing violation doctrine viable for pattern-or-practice claims. *See, e.g.*, *E.E.O.C. v. Sterling Jewelers, Inc.*, No. 08-CV-706, 2010 WL 86376, at *2, 7 (W.D. N.Y. Jan. 6, 2010); *EEOC v. Ceisel Masonry, Inc.*, 594 F. Supp. 2d 1018, 1022 (N.D. Ill. 2009); *EEOC v. Scolari Warehouse Markets, Inc.*, 488 F. Supp. 2d 1117, 1136–37 & n.17 (D. Nev. 2007); *Anderson v. Boeing Co.*, 222 F.R.D. 521, 547 (N.D. Okla. 2004). And one last approach implicitly accepts the continuing violation approach to pattern-or-practice claims, but favors deferring a ruling on whether to include class members outside the 300-day timely filing window until discovery reveals the nature of the pattern or practice. *See, e.g.*, *Equal Employment Opportunity Comm'n v. Pitre, Inc.*, No. CIV-11-0875-RB-KBM, 2012 WL 12995019, at *1 (D. N.M. Nov. 30, 2012); *E.E.O.C. v. Kovacevich "5" Farms*, No. CIV-F-06-165-OWW-TAG, 2007 WL 1174444, at *19 (E.D. Cal. Apr. 19, 2007).

[12] Defendant cites the Tenth Circuit's dicta in this unpublished opinion "that the continuing violations doctrine is viable only for hostile work environment claims." *Semsroth v. City of Wichita*, 304 Fed. App'x 707, 715 (2008); *see* Doc. 26, at 8 n.6. It is true that since *Morgan*, the Tenth Circuit has only applied the continuing violation doctrine to hostile work environment claims, but the Tenth Circuit applied the doctrine pre-*Morgan* in *Bruno*, an ADEA case that did not rely on a hostile work environment theory. *Bruno v. W. Elec. Co.*, 829 F.2d 957, 960–62 (10th Cir. 1987), *overruled on other grounds by Morgan*, 536 U.S. 101. The Tenth Circuit cannot reverse itself in an unpublished opinion, and the Court declines to read *Semsroth* to do so. *See Yang v. Archuleta*, 525 F.3d 925, 930 n.6 (10th Cir. 2008) (citing 10th Cir. R. App. P. 32.1(A)).

536 U.S. at 115 n.9) ("The question of how Title VII's filing deadlines should be applied to pattern-or-practice claims based on a series of discriminatory acts, some of which occurred outside the limitations period, has been left unanswered by the Court, and we do not consider it here.").

In the absence of precedent to the contrary, *Bruno* and its progeny remain valid law on this issue, allowing the EEOC to use the continuing-violation exception to Section 706's timely filing requirement for its pattern-or-practice claim. 829 F.2d at 961; *see Bullington*, 186 F.3d at 1311 (10th Cir. 1999); *Purrington v. Univ. of Utah*, 996 F.2d 1025, 1028 (10th Cir. 1993), *overruled on other grounds by Morgan*, 536 U.S. 101; *Seeber v. Williams Companies, Inc.*, No. 04-CV-0451-CVE-PJC, 2006 WL 2524249, at *9 (N.D. Okla. Aug. 28, 2006) ("The Tenth Circuit did not overrule its prior holdings . . . , so the court's prior precedent on the continuing violation doctrine must still be considered."). Perhaps if presented with the question directly, the Tenth Circuit would reconsider in light of *Morgan*. But until then, the Court is bound.

The EEOC's Amended Complaint also shows that its pattern-or-practice claim meets the characteristics of a continuing violation. The continuing violation doctrine is an equitable exception to Section 706's timely filing requirement for claims "based on the cumulative effect of individual acts." *Morgan*, 536 U.S. at 115. The Supreme Court in *Morgan* discussed the prototypical continuing violation, a hostile work environment claim. Whereas "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify"—and therefore easy to pinpoint the timely filing window—"[h]ostile environment claims are different in kind. . . . Their very nature involves repeated conduct." *Id.* at 114–15.

"To establish a continuing violation [a plaintiff] would have to show . . . the maintenance of a discriminatory system both before and during the [limitations] period." *Bruno v. W. Elec. Co.*, 829 F.2d 957, 961 (10th Cir. 1987) (internal quotations omitted), *overruled on other grounds by Morgan*, 536 U.S. 101. The Tenth Circuit uses three factors to determine if a violation is continuing:

> (i) subject matter—whether the violations constitute the same type of discrimination; (ii) frequency; and (iii) permanence—whether the nature of the violations should trigger an employee's awareness of the need to assert her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate.

*Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1310–11 & n.4 (10th Cir. 1999) (quoting *Martin v. Nannie and The Newborns, Inc.*, 3 F.3d 1410, 1415 (10th Cir. 1993)), *overruled on other grounds by Morgan*, 536 U.S. 101.

The EEOC's Claim 2 alleges that HWD used drilling rig applicants' workers' compensation history to perpetuate a pattern or practice of discriminatory failure to hire based on disability in violation of the ADA. Doc. 4, at 9–11. The claim clearly satisfies the first two continuing violation factors; each of HWD's alleged failures to hire was "the same type of discrimination," disability-based, and they occurred "frequen[tly]." *Bullington*, 186 F.3d at 1310; *see* Doc. 4, at 6, 10 (HWD "routinely . . . perform[ed] a workers' compensation background search on *all applicants* before the . . . interview" and "hired applicants who reported workers' compensation injury and claims history at *significantly lower rates* than it hired applicants who did not . . . .") (emphasis added).

The Tenth Circuit no longer regards the permanence factor when assessing hostile work environment claims, but to the extent the factor may still impact pattern-or-practice

claims, the EEOC's Claim 2 satisfies permanence.[13] Viewing the facts in Plaintiff's favor, there is no indication that HWD's failure to hire applicants between January 2012 and June 2012 "should [have] trigger[ed] an [applicant]'s awareness of the need to assert her rights" or that "the consequences of the act would continue even in the absence of a continuing intent to discriminate." *Bullington*, 186 F.3d at 1310. From the applicant's perspective, HWD could have declined to hire her for any number of non-discriminatory reasons, like a competitive applicant pool or lack of experience.[14] Therefore, the EEOC's Claim 2 meets the characteristics for a continuing violation.

The Court finds—and Defendant does not appear to dispute—that the EEOC alleges a "plausible" pattern-or-practice claim for failure to hire under the ADA. *Twombly*, 550 U.S. at 558; *see* Doc. 4, at 9–10.[15] Further, the Tenth Circuit's cases provide for a continuing pattern-or-practice claim, and the EEOC alleges a plausible continuing violation. Accordingly, the EEOC can use the continuing violation exception to Section 706's timely filing rule to recover on behalf of disabled individuals aggrieved by HWD's alleged pattern or practice of failure to hire "[s]ince at least January 2012." Doc. 4, at 9–10. If at a later stage the EEOC cannot meet its burden to prove a continuing violation, Defendant may raise this issue again.

---

[13]     *Morgan* implicitly overruled *Bullington, Martin* and other Tenth Circuit cases to the extent these cases held that recovery on a Title VII hostile work environment claim is not available for acts taken outside the statutory time period where the plaintiff knew or should have known the conduct was discriminatory when the acts occurred.
*Boyer v. Cordant Techs., Inc.*, 316 F.3d 1137, 1140 (10th Cir. 2003); *see also Davidson*, 337 F.3d at 1185.

[14] While it may have seemed apparent that certain application questions were improper, they would not necessarily have alerted applicants that HWD relied on the answers in its decision not to hire them.

[15] Defendant's contention is limited to whether the EEOC can bring a pattern-or-practice claim under Section 706, which the Court answered affirmatively. *See* Doc. 26, at 2–3; *supra* Part II(B)(1), at 17–18.

## 2. ADEA Limitation

Defendant also asserts the same Section 706 timely filing argument to challenge the EEOC's Claim 1 under the ADEA. *See* Doc. 12, at 17–20. Since at least January 2012, HWD allegedly subjected applicants, including Kurt Branch and James Cargal, to a pattern or practice of discriminatory failure to hire based on age. *See* Doc. 4, at 8–9. Defendant received notice of the EEOC's Claim 1 not from Glover's charge, but from a charge by the EEOC's St. Louis Office on December 4, 2014, alleging ADEA-improper hiring practices. Doc. 4, at 4. Three hundred days prior was February 7, 2014. Thus, Defendant seeks to bar class members allegedly discriminated against between January 2012 and February 2014. The EEOC responds that it is not relying on Sections 706 or 707 for its authority to bring an ADEA pattern-or-practice claim; instead, its authority originates in the ADEA's 29 U.S.C. § 626(b), which adopts "the powers, remedies, and procedures provided in" the Fair Labor Standards Act. Defendant maintains that "[t]o the extent that the charge filing requirements of the ADEA and Title VII are similar, courts must construe them consistently." *Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1309 (10th Cir. 2005)

The Court declines to rule on the applicable timely filing requirement, if any, for ADEA claims because—as addressed above—the EEOC plausibly invokes the continuing violation exception. *See* Doc. 4, at 8–9; Doc. 21, at 9–12. The continuing violation doctrine presumably applies equally to an ADEA pattern-or-practice claim as to one under the ADA. Therefore, the EEOC may proceed on behalf of individuals age forty and above aggrieved by HWD's alleged pattern or practice of failure to hire "[s]ince at least January 2012." Doc. 4, at 8–9. If the EEOC later fails to meet its continuing violation burden, Defendant may

raise this issue or the governing timely filing requirement again.

## C. Quasi-Estoppel and Waiver

Defendant next seeks to bar the EEOC's ADA- and GINA-based claims, Claims 2–5,[16] that the EEOC allegedly resolved at conciliation following former HWD employee Sedric Stewart's charge of discrimination with the EEOC's Pittsburgh Office. Doc. 12, at 20. HWD wants to quasi-estop the EEOC from attempting a "second bite at the apple" and seeking greater relief on its ADA and GINA claims through litigation than it agreed to during the Pittsburgh conciliation. *Id.* at 22. Alternatively, Defendant argues that the EEOC waived these claims at conciliation. The Court defers consideration of these arguments for dismissal because consideration of the Pittsburgh conciliation agreement would require converting Defendant's 12(b)(6) motion (Doc. 12) to one for summary judgment. *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). Defendant may file a preliminary motion for partial summary judgment addressing this issue without sacrificing its ability to file an additional summary judgment motion after discovery.

## D. Redundancy

Defendant argues that Glover's Claims 3–5 are redundant. Glover concedes that his Claim 5 is duplicative of the EEOC's Claim 3. "It . . . goes without saying that the courts can and should preclude double recovery by an individual." *Gen. Tel.*, 446 U.S. at 333. Accordingly, the Court dismisses Glover's Claim 5.

As for Glover's Claims 3 and 4, Defendant fails to address the apparent dissimilarities

---

[16] The EEOC incorrectly argues that Defendant waived its quasi-estoppel or waiver argument for dismissal of the EEOC's Claim 2 because Defendant only listed "Counts I, III, IV and V" in its motion to dismiss. Doc. 21, at 21 n.6 (citing Doc. 12, at 31). Defendant clearly, and repeatedly, argues for dismissal of "ADA and GINA claims," which include Claim 2. Doc. 12, at 20–31.

between those claims and the EEOC's claims. Glover's Claims 3 and 4 concern the HWD employment application's prohibited inquiries into medical information, medical history, and family medical history under the ADA and GINA. By contrast, the EEOC's only claim concerning a prohibited inquiry targets HWD's post-application workers' compensation searches, which is separate actionable conduct.

**E.  Delay**

The Court cannot consider Defendant's delay argument against Glover's Claims 3–5 regarding the "amount of time that passed between the EEOC Charge and the alleged notice" because it is not sufficiently briefed and it would likely require 12(b)(6) consideration of documents outside the complaint that are not (1) "referred to in the complaint," (2) "central to . . . [P]laintiff's claim," and (3) "indisputably authentic." *GFF Corp.*, 130 F.3d at 1384. *See* Doc. 29-10.

## III.  Conclusion

Accordingly, Defendant's Motion to Dismiss Claims 1–5 of Plaintiff EEOC's Amended Complaint (Doc. 12) is DENIED, and Defendant's Motion to Dismiss Class Action Claims 3–5 of Plaintiff-Intervenor Glover's Complaint (Doc. 24) is GRANTED IN PART with respect to Glover's Claim 5 and DENIED IN PART with respect to Glover's Claims 3 and 4.

IT IS SO ORDERED this 18th day of June, 2018.

**DAVID L. RUSSELL**
**UNITED STATES DISTRICT JUDGE**