# IN THE UNITED STATES DISTRICT COURT FOR THE

# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, )<br><br>Plaintiff, )<br><br>and )<br><br>WILBERT GLOVER, individually, and on behalf of all others similarly situated, )<br><br>Plaintiff-Intervenor, )<br><br>v. )<br><br>HORIZONTAL WELL DRILLERS, LLC, )<br><br>Defendant. ) | Case No.  CIV-17-879-R |

## PLAINTIFF-INTERVENOR'S MOTION FOR CLASS CERTIFICATION AND BRIEF IN SUPPORT

Jonathan E. Shook, OBA #17343
SHOOK & JOHNSON, P.L.L.C.
7420 S. Yale Ave.
Tulsa, Oklahoma 74136
(918) 293-1122 - *Telephone*
(918) 293-1133 - *Fax*

**Attorney for Plaintiff-Intervenor, Wilbert Glover**

**February 11, 2019**

# TABLE OF CONTENTS

I.     INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    FACTS PERTINENT TO GLOVER'S MOTION FOR
       CLASS CERTIFICATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.   ARGUMENT AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

       A.   THE APPLICABLE SUBSTANTIVE LAW. . . . . . . . . . . . . . . . . . . . . . . 9

            1.   The ADA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

            2.   GINA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

       B.   CLASS CERTIFICATION REQUIREMENTS. . . . . . . . . . . . . . . . . . . . 13

            1.   Rule 23(a) Requirements. . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

                 a.  Numerosity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
                 b.  Commonality. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
                 c.  Typicality. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
                 d.  Adequacy. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

            2.   Rule 23(b)(3) Requirements. . . . . . . . . . . . . . . . . . . . . . . . . 15

                 a.  Predominance. . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
                 b.  Superiority. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

       C.   ANALYSIS - THE REQUIREMENTS OF RULE 23(a) AND RULE 23(b)(3)
            ARE SATISFIED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

       D.   DEFINITION OF THE CLASS. . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

       E.   GLOVER'S COUNSEL SHOULD BE APPOINTED CLASS COUNSEL
            PURSUANT TO RULE 23(g). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

IV.    CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## <u>TABLE OF AUTHORITIES</u>

### <u>Federal Cases</u>

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997). . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455 (2013). . . . . . . . . . . . . . . . 19

*Bennett v. Sprint Nextel Corp.*, 2014 WL 1260111 (D. Kan. Mar. 27, 2014). . . . . . . . . . 20

*Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225 (11th Cir. 2016). . . . . . . . . 16, 20

*Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*,
  765 F.3d 1205 (10th Cir. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188 (10th Cir. 2010). . . . . . . . . . . . . . . 14, 15

*EEOC v. Grane Healthcare Co.*, 2 F.Supp.3d 667 (W.D. Pa. 2014). . . . . . . . . . . . .  9, 10

*EEOC v. Celadon Trucking Servs.*, 2015 WL 3961180 (S.D. Ind. June 30, 2015). . . . . . . 9

*Gen. Tel. Co. of the Nw., Inc. v. Equal Emp't Opportunity Comm'n*,
  446 U.S. 318 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Green v. Joy Cone Co.*, 278 F.Supp.2d 526 (W.D. Pa. 2003). . . . . . . . . . . . . . . . . . . . . . 9

*Grenier v. Cyanamid Plastics, Inc.*, 70 F.3d 667 (1st Cir. 1995). . . . . . . . . . . . . . . . . . . 10

*Griffin v. Steeltek, Inc.*, 160 F.3d 591 (10th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Harrison v. Benchmark Elecs. Huntsville, Inc.*, 593 F.3d 1206 (11th Cir. 2010). . . . . . 9, 10

*In re Ribozyme Pharm., Inc. Sec. Litig.*, 192 F.R.D. 656 (D. Colo. 2000). . . . . . . . . . . . 19

*In re Urethane Antitrust Litig.*, 237 F.R.D. 440 (D. Kan. 2006). . . . . . . . . . . . . . . . .  21

*Just Film, Inc. v. Buono*, 847 F.3d 1108 (9th Cir. 2017). . . . . . . . . . . . . . . . . . . . . . .  17

*Lane v. Page*, 272 F.R.D. 581 (D. N.M. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Lee v. City of Columbus*, 636 F.3d 245 (6th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Menocal v. GEO Grp., Inc.*, 882 F.3d 905 (10th Cir. 2018). . . . . . . . . . . . 13, 14, 15, 17, 20

*Monreal v. Potter*, 367 F.3d 1224 (10th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Poore v. Peterbilt of Bristol, L.L.C.*, 852 F.Supp.2d 727 (W.D. Va. 2012). . . . . . . . 12, 13

*Reed v. Bowen*, 849 F.2d 1307 (10th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Rex v. Owens ex rel. Okla.*, 585 F.2d 432 (10th Cir. 1978). . . . . . . . . . . . . . . . . . . . . . . .   14

*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180 (10th Cir. 2002). . . . . . . . . . . . 15

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. __, 136 S. Ct. 1036 (2016). . . . . . . . . . 15, 16

*Universal Serv. Fund Tel. Billing Practices Litig.*, 219 F.R.D. 661 (D. Kan. 2004). . . . . 20

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). . . . . . . . . . . . . . . . . . . 13, 14, 17, 18

## Federal Statutes and Regulations

42 U.S.C. § 12101(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

42 U.S.C. § 12112(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

42 U.S.C. § 2000ff. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

29 C.F.R. §1635.3(c)(iii). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

29 C.F.R. §1635.8(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

80 Fed. Reg. 66,853 (2015) (proposed rule). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

Fed. R. Civ. P. 8. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

Fed. R. Civ. P. 23(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 13, 14, 15, 17, 22

Fed. R. Civ. P. 23(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 15, 16, 17, 20, 22

Fed R. Civ. P. 23(c)(1)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

Fed. R. Civ. P. 23(g). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   22

## Secondary Materials

*EEOC Enforcement Guidance on Disability-Related Inquiries and Medical Examinations of Employees Under the Americans with Disabilities Act*, (EEOC Notice 915.002, July 27, 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

William B. Rubenstein, Newberg on Class Actions § 4:54 (5th ed.). . . . . . . . . . . . . . .   16

IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,      ) ) )  Plaintiff, ) ) and ) ) WILBERT GLOVER, individually, ) and on behalf of all others similarly ) situated, ) )  Plaintiff-Intervenor, ) ) v. ) ) HORIZONTAL WELL DRILLERS, ) LLC, ) )  Defendant. ) | Case No.  CIV-17-879-R |

**PLAINTIFF-INTERVENOR'S MOTION FOR CLASS CERTIFICATION
AND BRIEF IN SUPPORT**

Plaintiff-Intervenor Wilbert Glover ("Glover") respectfully submits this Motion for Class Certification and brief in support.  Glover's motion should be granted because his class claims on behalf of similarly-situated job applicants satisfies each of the FED. R. CIV. P. 23(a) prerequisites and falls under at least one of FED. R. CIV. P. 23(b)'s categories of class actions. In support of this motion, Glover would show the Court as follows:

## I.    INTRODUCTION

Glover filed a charge of discrimination against Defendant Horizontal Well Drillers, LLC ("HWD") with the United States Equal Employment Opportunity Commission ("EEOC") in March 2013.  He alleged violations of the Americans with Disabilities Act of 1990, as amended by the ADA Amendments Act of 2008 ("ADA") and the Genetic Information Nondiscrimination Act of 2008 ("GINA").

After investigating Glover's charge, the EEOC issued a Determination in February 2016.  The EEOC found reasonable cause to believe that HWD had committed unlawful

employment practices in violation of the ADA and GINA.  Specifically, as pertinent to Glover's class claims, the EEOC found that:

> (1) HWD unlawfully subjected Glover to pre-employment medical inquiries in violation of the ADA and GINA; and

> (2) HWD discriminated against and denied employment opportunities to other employees and applicants in violation of the ADA and GINA pursuant to its routine pre-employment acquisition of genetic information and prohibited disability-related inquiries.

On December 7, 2016, the EEOC issued a Notice of Failure of Conciliation.  The EEOC subsequently commenced an enforcement action against HWD through the initiation of this litigation on August 16, 2017.  [EEOC First Amended Complaint (dkt. #4).]

Glover sought to intervene, which was granted by the Court.  [Motion to Intervene (dkt. #6)]; [Order (dkt. #8).]

Glover filed his Complaint in intervention on October 30, 2017.  [Intervenor's Complaint (dkt. #17).]  Glover claims that he and the other similarly-situated job applicants were subjected to impermissible and unlawful pre-employment medical inquiries when HWD routinely solicited information from them about family health history, current doctors' care status, current prescription drug status, and current health problems and conditions.

Accordingly, Glover asserts two (2) class action claims concerning HWD's job applications.[1]  First, he claims that HWD violated the ADA, during the period January 1, 2012 through June 30, 2014, by asking him and the other similarly-situated job applicants pre-offer and pre-employment medical questions which elicited, or were likely to elicit, information about a disability or the severity of an applicant's impairments.

---

[1]Glover initially asserted a third class action claim, *i.e.* that HWD violated the ADA when it conducted workers' compensation background searches on him and other similarly-situated job applicants before making a conditional offer of employment.  In ruling on HWD's motion to dismiss Glover's class claims, the Court dismissed his workers' compensation background search-related class claim as duplicative of the EEOC's Claim III. [HWD Motion to Dismiss (dkt. #24)]; [Order (dkt. #37), pp. 23-24.]

Second, Glover claims that HWD violated GINA, during the period January 1, 2012 through June 30, 2014, by asking him and the other similarly-situated job applicants to disclose genetic information, including family medical history during the job application process.

By this combined motion and brief in support, Glover respectfully moves the Court for an order certifying this case as a class action under FED. R. CIV. P. 23(a) and 23(b)(3). Glover also requests that he be designated as class representative and that Jonathan E. Shook of SHOOK & JOHNSON, PLLC be appointed as class counsel.  Finally, Glover asks the Court to designate the class as follows:

> All applicants who applied for employment with HWD during the period January 1, 2012 through June 30, 2014, using HWD's online or paper-based employment application.

## II.     FACTS PERTINENT TO GLOVER'S MOTION FOR CLASS CERTIFICATION

### HWD's Employment Applications

1.      From at least January 2012 until approximately August 2014, HWD used an online job application process which required applicants to either fill out an application online or print out the application and fax the completed form to HWD's corporate office. [Intervenor's Complaint (dkt. #17), ¶ 20)]; [HWD Answer (dkt. #23), ¶ 20)]; [HWD Answer (dkt. #44), p. 2).]

2.      Applicants could also access and print out the online employment application and submit the completed form by facsimile to HWD's corporate office in Purcell, Oklahoma. [*Id.*]

3.      HWD's online employment application used from at least January 2012 until approximately August 2014 is attached as **Exhibit 1**.  [Intervenor's Complaint (dkt. #17), ¶ 21)]; [HWD Answer (dkt. #23), ¶ 21)]; [HWD Answer (dkt. #44), p. 2).]; [EEOC First

Amended Complaint (dkt. #4), ¶ 14.]; [HWD Answer to EEOC First Amended Complaint (dkt. #46), ¶ 14]; [Joint Status Report (dkt. #47), Stipulated Fact ¶3(m).]

4.    A hard-copy, paper-based form of HWD's job application used from at least January 2012 until approximately August 2014 was substantially the same as the online application.  [Intervenor's Complaint (dkt. #17), ¶ 22)]; [HWD Answer (dkt. #23), ¶ 22)]; [HWD Answer (dkt. #44), p. 2).]

5.    HWD's hard-copy, paper-based employment application used from at least January 2012 until approximately August 2014 is attached as **Exhibit 2**. [Intervenor's Complaint (dkt. #17), ¶ 23)]; [HWD Answer (dkt. #23), ¶ 23)]; [HWD Answer (dkt. #44), p. 2).]

6.    HWD's online employment application contains an "*Occupational Health Confidential Pre-Placement Health Assessment*" section.  The section contains questions requesting information about the applicant's family health history and personal medical history, as follows:

- Birth Date

- Age

- **Family Health History** (including check boxes for various specific conditions, including asthma, diabetes, neurological disorders or epilepsy, blood disorders, cancer, heart disease, strokes, kidney disease, and high blood pressure suffered by any "near relative")

- **Are you Currently Under a Doctor's Care**? (with box for explanation if Yes)

- **Are You Currently Taking Prescription Drugs**? (with box for explanation if Yes)

- **Do You Currently Have Any Problems Related To**: (including check boxes for various specific conditions, including but not limited to eye or vision defects, ear or hearing defects, epilepsy, convulsions, chest pain, arthritis, heart trouble, high blood pressure, anemia, diabetes, and other illness, injury, health complaint (with box to explain All Yes Answers)

- Give Dates, Types of Illnesses or Injuries, and if Any Lasting Effects (with

-4-

box for details)

[Ex. 1, pp. 5-7 (emphasis added).][2]

7.    The hard-copy, paper-based form of HWD's job application contains an "*Occupational Health Confidential Pre-Placement Health Assessment*" section. That section also contains questions requesting the same family health history and personal medical history information as does HWD's online application. [Ex. 2, pp. 2-3.]

**HWD Job Applicants - January 1, 2012 through June 30, 2014**

8.    During the period January 1, 2012 through June 30, 2014, HWD received applications from ***at least*** 3,289 job applicants using the HWD applications attached hereto as **Exhibits 1 and 2**. [Intervenor's Complaint (dkt. #17), ¶ 26)]; [HWD Answer (dkt. #23), ¶ 26)]; [HWD Answer (dkt. #44), p. 2);][3]

a.    During the course of the EEOC's investigation into Glover's charge, HWD admitted that **604** job applicants were hired during the period January 1, 2012 through March 31, 2013. [Email from HWD Counsel to the EEOC dated June 10, 2014 (bates-labeled EEOC-HWD000587) attached as **Exhibit 3**];[4] [List of Hired Applicants (bates-labeled EEOC-HWD01651-1674) attached as **Exhibit 4**.]

b.    HWD further admitted that for the period January 1, 2012 through

---

[2]HWD responded to Glover's allegation about the content of the *Occupational Health* section by saying "the document in question speaks for itself."  [HWD Answer (dkt. #23), ¶ 23)]; [HWD Answer (dkt. #44), p. 2).]  This approach to pleading has been rejected. *See Lane v. Page*, 272 F.R.D. 581, 602-03 (D. N.M. 2011) (stating that "[r]esponses that documents speak for themselves and that allegations are legal conclusions do not comply with rule 8(b)'s requirements." (collecting cases)).

[3]FED. R. CIV. P. 8 provides for only three possible responses to allegations in a civil complaint: (1) admit the allegation; (2) deny the allegation; or (3) state that there is insufficient knowledge or information to form a belief about the truth of the allegation. FED. R. CIV. P. 8(b)(1)-(5).  Because HWD did not respond to Glover's allegation about the number of job applicants HWD received during the period January 1, 2012 through June 30, 2014, the allegation is deemed admitted.  FED. R. CIV. P. 8(b)(6).

[4]HWD acknowledged that some job applications were missing. [Ex. 3.]

March 31, 2013, it received **1,375** applications that did not lead to the hiring of the applicant. [Ex. 3]; [List of Not Hired Applicants (bates-labeled EEOC-HWD01675-1717) attached as **Exhibit 5**.]

c.     By letter dated December 12, 2014, HWD provided job application information for the time period of April 1, 2013 through June 30, 2014, including indexes for hired and non-hired applicants. [HWD Counsel letter dated December 12, 2014 (bates-labeled EEOC-HWD000579) attached as **Exhibit 6**.]

d.     On February 17, 2015, HWD provided "corrected" versions of its indexes for hired and non-hired applicants for the period of April 1, 2013 through June 30, 2014. [HWD email dated February 17, 2015 (bates-labeled EEOC-HWD000626) attached as **Exhibit 7**.]

e.     As reflected in the indexes produced by HWD in February 2015, **520** job applicants were hired during the period April 1, 2013 through June 30, 2014. [List of Hired Applicants (bates-labeled EEOC-HWD01587-1650) attached as **Exhibit 8**.]

f.     As reflected in the indexes produced by HWD in February 2015, HWD received **2,568** applications during the period April 1, 2013 through June 30, 2014 that did not lead to the hiring of the applicant. [List of Not Hired Applicants (bates-labeled EEOC-HWD000424-85) attached as **Exhibit 9**.]

g.     More recently, in response to discovery in the instant litigation, HWD produced job applications and related indexes[5] that purport to show **526** job applicants were hired during the combined period January 1, 2012 through June 30, 2014 and that **2,707** job applicants were not hired during the referenced period.  [List of Hired Applicants (not bates-labeled attached as **Exhibit 10** and List of Non-Hired Applicants (not bates-labeled)

_____

[5]HWD produced the job applications on December 12, 2018 in response to Glover's second request for production.  HWD produced the indexes on January 30, 2019.

attached as **Exhibit 11**.][6]

**Glover's Application and Hire**

9.     Glover was one of the applicants who applied for a job with HWD during the period June 1, 2012 through March 31, 2013. [Ex. 4 at EEOC-HWD001654.]

10.     He  applied for employment with HWD on January 11, 2013.  He did so by completing HWD's online application and electronically submitting it to HWD. [Intervenor's Complaint (dkt. #17), ¶ 27)]; [HWD Answer (dkt. #23), ¶ 27)]; [HWD Answer (dkt. #44), p. 2)]; [Joint Status Report (dkt. #47), Stipulated Fact ¶3(a).]

11.     The employment application Glover submitted to HWD is attached as **Exhibit 12**. [EEOC First Amended Complaint (dkt. #4), ¶ 73.]; [HWD Amended Answer to EEOC First Amended Complaint (dkt. #46, ¶ 73]; [Joint Status Report (dkt. #47), Stipulated Fact ¶3(b).]

12.     On February 6, 2013, Glover was interviewed at HWD's offices in Purcell, Oklahoma. [Intervenor's Complaint (dkt. #17), ¶ 31)]; [HWD Answer (dkt. #23), ¶ 31)]; [HWD Answer (dkt. #44), p. 2)]; [Joint Status Report (dkt. #47), Stipulated Fact ¶3(c).]

13.     On February 6, 2013, immediately following the interview, HWD offered Glover a drilling rig job as a derrickhand. Glover accepted the position.  [Intervenor's Complaint (dkt. #17), ¶ 32)]; [HWD Answer (dkt. #23), ¶ 32)]; [HWD Answer (dkt. #44), p. 2)]; [Joint Status Report (dkt. #47), Stipulated Fact ¶3(c).]

14.     On February 7, 2013, Glover completed HWD's new employee orientation in HWD's corporate offices in Purcell.  [Intervenor's Complaint (dkt. #17), ¶ 33)]; [HWD

---

[6]The indexes and job applications most recently produced by HWD appear to have serious omissions when compared to HWD's submissions to the EEOC during its investigation on Glover's charge.  For instance, in HWD's most recent production, only a handful of applicants (hired and non-hired) are identified for the period January 1, 2012 through March 31, 2013.  In contrast, on June 10, 2014, HWD represented there were 1,979 applicants during that period. [Ex. 3.]

Answer (dkt. #23), ¶ 33)]; [HWD Answer (dkt. #44), p. 2)]; [Joint Status Report (dkt. #47), Stipulated Fact ¶3(f).]

15.     On February 7, 2013, following completion of the orientation process, Glover began working for HWD. He worked as a derrickhand at HWD's yard in Purcell. [Intervenor's Complaint (dkt. #17), ¶ 34)]; [HWD Answer (dkt. #23), ¶ 34)]; [HWD Answer (dkt. #44), p. 2)]; [Joint Status Report (dkt. #47), Stipulated Fact ¶3(g).]

**Glover's Charge of Discrimination and the Litigation**

16.     In late March 2013, Glover filed a perfected charge of discrimination with the EEOC asserting claims under the ADA and GINA against HWD.  [Intervenor's Complaint (dkt. #17), ¶ 33)]; [HWD Answer (dkt. #23), ¶ 33)]; [EEOC First Amended Complaint (dkt. #4), ¶ 6]; [HWD Amended Answer to EEOC First Amended Complaint (dkt. #46, ¶ 6.]

17.     The EEOC convened a conciliation conference on December 1, 2016, where at the EEOC, HWD, and Glover, through his counsel, engaged in the conciliation process in an effort to resolve Glover's charge.  [Intervenor's Complaint (dkt. #17), ¶¶ 14-15)]; [HWD Answer (dkt. #23), ¶¶ 14).]

18.     On December 7, 2016, the EEOC issued to HWD a Notice of Failure of Conciliation. [EEOC First Amended Complaint (dkt. #4), ¶ 11.]; [HWD Amended Answer to EEOC First Amended Complaint (dkt. #46, ¶ 11.]

19.     On August 16, 2017, the EEOC commenced an enforcement action against HWD through the initiation of this litigation. [EEOC First Amended Complaint (dkt. #4).]

20.     Glover sought leave to intervene in the litigation. [Glover's Motion to Intervene (dkt. #6).]

21.     HWD filed no objection to Glover's motion to intervene and the Court granted the motion on October 23, 2017.  [Order (dkt. #8).]

22.     Glover filed his Complaint in intervention on October 30, 2017.  [Intervenor's

Complaint (dkt. #17).]

## III.   ARGUMENT AND AUTHORITIES

### A.   THE APPLICABLE SUBSTANTIVE LAW

#### 1.     The ADA

In 1990, Congress passed the ADA "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).  In enacting the law, Congress specifically sought to limit the information available to employers at critical stages of the hiring process.  *EEOC v. Grane Healthcare Co.*, 2 F.Supp.3d 667, 678 (W.D. Pa. 2014).  It did so to provide prospective employees with prophylactic protection against the forms of discrimination prohibited by the ADA.  *Id*.; *see also EEOC v. Celadon Trucking Servs.*, 2015 WL 3961180 at *9 (S.D. Ind. June 30, 2015); *Green v. Joy Cone Co.*, 278 F.Supp.2d 526, 540 (W.D. Pa. 2003); *Harrison v. Benchmark Elecs. Huntsville, Inc.*, 593 F.3d 1206, 1215-1216 (11th Cir. 2010).

The provisions of the ADA pertaining to medical examinations and inquiries are codified at 42 U.S.C. § 12112(d), which state:

(d)   Medical examinations and inquiries.

    (1)   In general. The prohibition against discrimination as referred to in subsection (a) shall include medical examinations and inquiries.

    (2)   Preemployment.

        (A) Prohibited examination or inquiry. Except as provided in paragraph (3), a covered entity shall not conduct a medical examination or make inquiries of a job applicant as to whether such applicant is an individual with a disability or as to the nature or severity of such disability.

        (B) Acceptable inquiry. A covered entity may make preemployment inquiries into the ability of an applicant to perform job-related functions.

    (3)   Employment entrance examination. A covered entity may require a medical examination after an offer of employment has been made to a job applicant and prior to the

-9-

commencement of the employment duties of such applicant, and may condition an offer of employment on the results of such examination, if-

(A) all entering employees are subjected to such an examination regardless of disability;

(B) information obtained regarding the medical condition or history of the applicant is collected and maintained on separate forms and in separate medical files and is treated as a confidential medical record . . . .

42 U.S.C. § 12112(d).

The statutory framework was "designed to shield information about an applicant's medical condition from his or her prospective employer until *after* an offer of employment is made." *Grane Healthcare*, 2 F.Supp.3d at 679 (emphasis in original); *see also Griffin v. Steeltek, Inc.*, 160 F.3d 591, 594-95 (10th Cir. 1998) ("The legislative history of the ADA indicates that Congress wished to curtail all questioning that would serve to identify and exclude persons with disabilities from consideration for employment by drafting a prohibition on pre-offer medical examinations or inquiries."); *Harrison*, 593 F.3d at 1213 ("In enacting § 12112(d), Congress sought to prevent employers from using pre-employment medical inquiries to exclude applicants with disabilities—particularly those with so-called hidden disabilities such as epilepsy, diabetes, emotional illness, heart disease, and cancer-before their ability to perform the job was even evaluated."); *Grenier v. Cyanamid Plastics, Inc.*, 70 F.3d 667, 677 (1st Cir. 1995) (the purpose of the provision is to ensure that a prospective employee's hidden disabilities stay hidden at the pre-hire stage).

Consistent with Congressional intent, the EEOC has explained that medical inquiries likely to elicit answers relating to disabilities are prohibited.  *See Harrison*, 593 F.3d 1206 (citing *EEOC, Enforcement Guidance on Disability-Related Inquiries and Medical Examinations of Employees Under the Americans with Disabilities Act* (EEOC Notice 915.002, July 27, 2000) (at https://www.eeoc.gov/policy/docs/guidance-inquiries.html)

("Enforcement Guidance") (last visited Feb. 5, 2019).

Among other things, the *Enforcement Guidance* makes clear that prohibited disability-related inquiries include:

- asking about an employee's genetic information;

- asking an employee whether he currently is taking any prescription drugs or medications; and

- asking an employee a broad question about his impairments (e.g., what impairments do you have?).

*Enforcement Guidance* at Section B(1); *see also Lee v. City of Columbus*, 636 F.3d 245, 254 (6th Cir. 2011) ("Obviously, asking an employee whether he is taking prescription drugs or medication, or questions seeking information about illnesses, mental conditions, or other impairments [an employee] has or had in the past[,] trigger[s] the ADA's . . . protections.")

HWD has violated the ADA's unequivocal prohibition against all pre-offer disability related questions by asking Glover and several thousand other similarly-situated job applicants forbidden disability-related questions as a routine part of its employment application process.

## 2.    GINA

GINA prohibits discrimination by employers against individuals on the basis of genetic information and makes it unlawful, with certain exceptions, for an employer to request, require, or purchase genetic information with respect to an employee or a family member of the employee.  42 U.S.C. § 2000ff-1(a) and (b).[7]

"Genetic information" is defined under GINA as information about (1) an individual's genetic tests; (2) the genetic tests of family members of an individual; or (3) the

---

[7]The EEOC regulations at 29 C.F.R. §1635.8(a) provide that unlawful requests for genetic information under GINA include "[m]aking requests for information about an individual's current health status in a way that is likely to result in a covered entity obtaining genetic information."

-11-

manifestation of a disease or disorder in family members of an individual.  42 U.S.C. § 2000ff(4)(A).

The applicable EEOC regulation clarifies that the phrase "manifestation of a disease or disorder in family members" refers to an employee's "family medical history" as interpreted in accordance with its normal understanding as used by medical providers.  29 C.F.R. §1635.3(c)(iii).

In enacting GINA, Congress acknowledged that "[n]ew knowledge about genetics may allow for the development of better therapies that are more effective against disease or have fewer side effects than current treatments" but expressed the related worry that "[t]hese advances give rise to the potential misuse of genetic information to discriminate in health insurance and employment.'' *See* 42 U.S.C. 2000ff,  note.

Congress also expressed concern about common misconceptions that an individual's genetic predisposition for a condition necessarily leads to the individuals developing the condition, explaining that "[a]n employer might use information about an employee's genetic profile to deny employment to an individual who is healthy and able to perform the job." "With these misconceptions so prevalent, employers may come to rely on genetic testing to 'weed out' those employees who carry genes associated with diseases."  80 Fed. Reg. 66,853 (2015) (proposed rule).

In *Poore v. Peterbilt of Bristol, L.L.C.*, the court reviewed the legislative history of GINA and said "[t]he basic intent of GINA is to prohibit employers from making a 'predictive assessment concerning an individual's propensity to get an inheritable genetic disease or disorder based on the occurrence of an inheritable disease or disorder in [a] family member.'" *Poore v. Peterbilt of Bristol, L.L.C.*, 852 F.Supp.2d 727, 730 (W.D. Va. 2012) (quoting H.R. Rep. No. 110-28, pt. 3, at 70 (2007)).

"Congress included family medical history in the definition of 'genetic information'

-12-

because it understood that employers could potentially use family medical history 'as a surrogate for genetic traits.'"  *Id.* (quoting H.R. Rep. No. 110-28, pt. 1, at 36 (2007)).  "For instance, a consistent history of an inheritable disease in an individual's family may be viewed to indicate that the individual himself is at an increased risk for that disease."  *Id.*

HWD has violated GINA's unequivocal prohibition against pre-employment requests for genetic information by asking Glover and several thousand other similarly-situated job applicants to disclose their family medical histories as a routine part of its employment application process.

### B.   CLASS CERTIFICATION REQUIREMENTS

The decision whether to grant or deny class certification "involves intensely practical considerations," *Reed v. Bowen*, 849 F.2d 1307, 1309 (10th Cir. 1988), and therefore "belongs within the discretion of the trial court," *Monreal v. Potter*, 367 F.3d 1224, 1235 (10th Cir. 2004) (quotations omitted).  Class certification is appropriate if, after rigorous analysis, the court finds that the proposed class satisfies the requirements of Federal Rule of Civil Procedure 23.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345, 350–51 (2011).  A plaintiff seeking class certification "must show that the underlying case (1) satisfies each of Rule 23(a)'s prerequisites, and (2) falls under at least one of Rule 23(b)'s categories of class actions.  *Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 913 (10th Cir. 2018).

### 1.   Rule 23(a) Requirements

The four threshold requirements of Rule 23(a) are: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  *Id.* at 913-14; *see* FED. R. CIV. P. 23(a).

-13-

### a.  Numerosity

Rule 23(a) requires that "the class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a).  "The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations."  *Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1214-15 (10th Cir. 2014) (quoting *Gen. Tel. Co. of the Nw., Inc. v. Equal Emp't Opportunity Comm'n*, 446 U.S. 318, 330 (1980).  At bottom, a plaintiff must offer "some evidence of established, ascertainable numbers constituting the class," but there is "no set formula to determine if the class is so numerous that it should be so certified." *Id*. at 1215 (quoting *Rex v. Owens ex rel. Okla.*, 585 F.2d 432, 436 (10th Cir. 1978).

### b.  Commonality

"To satisfy the commonality requirement, a party seeking class certification must demonstrate 'there are questions of law or fact common to the class.'" *Menocal*, 882 F.3d at 914 (quoting FED. R. CIV. P. 23(a)(2)).  "In other words, the class members' claims must 'depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. at 914 (quoting *Wal-Mart*, 564 U.S. at 350. "A finding of commonality requires only a single question of law or fact common to the entire class."  *Id*. (quoting *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1195 (10th Cir. 2010); *see also Wal-Mart*, 564 U.S. at 359 ("We quite agree that for purposes for Rule 23(a)(2) even a single common question will do." (brackets and quotations omitted)).

### c.  Typicality

"To satisfy the typicality requirement, a party seeking class certification must demonstrate that 'the claims or defenses of the representative parties are typical of the claims

-14-

or defenses of the class.'" *Menocal*, 882 F.3d at 914 (quoting Fᴇᴅ. R. Cɪᴠ. P. 23(a)(3)). "[D]iffering fact situations of class members do not defeat typicality . . . so long as the claims of the class representative and class members are based on the same legal or remedial theory." *Id*. (quoting *Colo. Cross Disability*, 765 F.3d at 1216 (quotations omitted). "[T]ypicality exists where . . . all class members are at risk of being subjected to the same harmful practices, regardless of any class member's individual circumstances." *D.G. ex rel. Stricklin*, 594 F.3d at 1199.

### d. Adequacy

Finally, as required by Rule 23(a)(4), a plaintiff seeking class certification must demonstrate that he will "fairly and adequately protect the interests of the class." The adequacy analysis encompasses two separate inquiries: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002).

### 2. Rule 23(b)(3) Requirements

"A Rule 23(b)(3) class action must satisfy two additional requirements: (1) the "questions of law or fact common to class members [must] predominate over any questions affecting only individual members" (the "predominance" requirement), and (2) a class action must be "superior to other available methods for fairly and efficiently adjudicating the controversy" (the "superiority" requirement)." *Menocal*, 882 F.3d at 914; *see* Fᴇᴅ. R. Cɪᴠ. P. 23(b)(3).

### a. Predominance

The Supreme Court recently explained the predominance inquiry under Rule 23(b)(3) as follows:

> The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. This calls upon courts to

give careful scrutiny to the relation between common and individual questions in a case. An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof. The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues. When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. __, 136 S. Ct. 1036, 1045 (2016) (citations and internal quotations omitted).

"District courts should assess predominance with its overarching purpose in mind—namely, ensuring that 'a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1235 (11th Cir. 2016) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (alteration in original).

"The 'black letter rule' recognized in every circuit is that 'individual damage calculations generally do not defeat a finding that common issues predominate.'" *Brown*, 817 F.3d at 1239 (quoting William B. Rubenstein, Newberg on Class Actions § 4:54 (5th ed.); *Menocal*, 882 F.3d at 922 ("[T]he fact that damages may have to be ascertained on an individual basis is not, standing alone, sufficient to defeat class certification.").

**b. Superiority**

The superiority requirement for class certification under Rule 23(b)(3) requires consideration of a non-exhaustive list of pertinent factors, including: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against

-16-

class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. FED. R. CIV. P. 23(b); *Menocal*, 882 F.3d at 915.

As explained in *Menocal*, "the Rule 23(b)(3) class action is superior when it allows for the vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Id*. (internal quotation marks omitted) (citing *Amchem*, 521 U.S. at 617); *see also Just Film, Inc. v. Buono*, 847 F.3d 1108, 1123 (9th Cir. 2017) (crediting unlikelihood that class members would individually pursue their claims due to risks, small recovery, and costs of litigation as the consideration "at the heart" of the superiority analysis).

### C.   ANALYSIS - THE REQUIREMENTS OF RULE 23(a) AND RULE 23(b)(3) ARE SATISFIED

The numerosity, commonality, and typicality requirements are easily established. At least 3,289 applicants for employment with HWD,[8] and possibly as many as 5,067 such applicants,[9] are eligible to become class members, making joinder impracticable.

Glover's two class claims posit a common fact contention, i.e., that the job application used by HWD during the period January 1, 2012 through June 30, 2014 solicited information from the applicants about their family and personal health history, doctors' care status, prescription drug use, and current health issues. To the extent there is any genuine dispute about it, the determination of that common fact question "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Menocal*, 882 F.3d at 914 (quoting *Wal-Mart*, 564 U.S. at 350).

Furthermore, answering the law question - whether HWD's use of a job application

---

[8]Fact No. 8.

[9]Fact No. 8 (a), (b), (e), and (f).

-17-

that solicited information about the applicant's family and personal health history, doctors' care status, prescription drug use, and current health issues violates the ADA and/or GINA – for one class member answers the question for all class members. *See Wal-Mart*, 564 U.S. at 350 (noting that commonality exists if a class-question generates common answers).

Glover and all class members share the same theory – that HWD's routine pre-employment acquisition of genetic information and prohibited disability-related inquiries via its job application violates the ADA's prohibitions on pre-offer medical examinations or inquiries  and GINA's prohibitions on soliciting family medical history from a prospective employee.  Indeed, Glover's claims are not only typical of the claims of the putative class members, they are identical to them.  Glover and all proposed class members were subjected to the same harmful practices.

The adequacy requirement is satisfied.  Glover has already demonstrated he will "fairly and adequately protect the interests of the class."  He is a member of the class, who through his charge, has protected and preserved the rights of the putative class members since March 2013.  [Fact Nos. 9-11, 16.]  And while Glover does have individual claims in the litigation, his individual interests don't conflict with those of other class members.  Indeed, Glover and his counsel have demonstrated through their patient and persistent prosecution of Glover's ADA and GINA class claims that they will prosecute the action vigorously on behalf of the class.[10]

Moreover, Glover's counsel is "qualified, experienced and able to vigorously conduct

---

[10]Significantly, Glover's class claims are distinct from any claims brought by the EEOC. [Order (dkt. #37), pp 23-24.]  His class claims concern whether the HWD employment application's inquiries into medical information, medical history, and family medical history violated the ADA and GINA.  Whereas, the EEOC has not brought a pre-offer unlawful inquiry claim under GINA and the EEOC's failure to hire and unlawful inquiry claims under the ADA are more narrowly premised upon unlawful pre-offer inquiries and searches into each applicant's prior workers' compensation history.  [EEOC's First Amended Complaint at Counts II & III (dkt. #4)]

-18-

the proposed litigation." *See In re Ribozyme Pharm., Inc. Sec. Litig.*, 192 F.R.D. 656, 659 (D. Colo. 2000). Glover is represented by Jonathan E. Shook of SHOOK & JOHNSON, PLLC, who is a long-time and highly-rated plaintiff's employment law-related lawyer with experience litigating employment discrimination matters in federal court.[11] Indeed, Glover's counsel has already demonstrated adequacy and vigorous prosecution on behalf of the putative class members in this case through his briefing in response to HWD's motion to dismiss Glover's class claims. But for counsel's work to distinguish HWD's principal exhaustion-related authorities, Glover's class claims may well have not survived. [Glover Resp. Br. (dkt. #29), pp. 11-13 (distinguishing federal-sector employment cases relied upon by HWD as inapposite to exhaustion issue in this private-sector case); [Order (dkt. #37), pp. 10-15 (noting that "at first glance" the HWD-cited case precluded Glover's class claims but upon inspection finding Glover's argument to be correct and holding Glover had administratively exhausted the class claims).

The predominance requirement is met here because common questions of law and fact predominate over individual issues in the case. If a common issue would lead the class to prevail or fail in unison, that issue predominates and the predominance requirement is satisfied. *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459-60, 469 (2013).

As stated above, Glover's claims that HWD's employment application violates the ADA and GINA are shared by all class members and rely on common evidence to answer common questions. If Glover fails to prove that HWD's job application violates the

---

[11]Glover's counsel has been involved in this matter since the onset of Glover's charge filed with the EEOC in 2013, and during the subsequent years of fact investigation leading to the EEOC's Determination and the parties' conciliation efforts thereafter. [Glover Charge Submission Letter to the EEOC attached as **Exhibit 13**]; [EEOC Determination on Glover's Charge attached as **Exhibit 14**]; [EEOC Notice of Conciliation Failure on Glover's Charge attached as **Exhibit 15**.]

prophylactic statutory protections of the ADA and GINA, then all class members would fail on the issue.

If Glover and the putative class members prevail, they stand to recover statutory damages as prescribed by the ADA and GINA. And while determining the extent of statutory damages may require the Court to resolve some individual questions, such as the amount of damages incurred or to be awarded, these considerations do not overwhelm the common issues. *Menocal*, 882 F.3d at 922 ("[T]he fact that damages may have to be ascertained on an individual basis is not, standing alone, sufficient to defeat class certification."); *Brown*, 817 F.3d at 1239 ("The 'black letter rule' recognized in every circuit is that 'individual damage calculations generally do not defeat a finding that common issues predominate.'").

Finally, the Rule 23(b) requirement of superiority is satisfied here. "Where individual claims are similar, a class action may be superior to discrete actions that could be 'grossly inefficient, costly, and time consuming because the parties, witnesses, and courts would be forced to endure unnecessarily duplicative litigation.'" *Bennett v. Sprint Nextel Corp.*, 2014 WL 1260111, at *11 (D. Kan. Mar. 27, 2014) (quoting *Universal Serv. Fund Tel. Billing Practices Litig.*, 219 F.R.D. 661, 679 (D. Kan. 2004) (explaining that where individual claims likely involve relatively insubstantial amounts of money, a class action is perhaps the only feasible way for plaintiffs to pursue those claims)).

As discussed above, Glover's class claims are identical to the claims of several thousand putative class members and common issues will predominate. Glover's claims against HWD concerning its routine pre-employment acquisition of genetic information and prohibited disability-related inquiries during the period January 1, 2012 through June 30, 2014, if individually litigated by other similarly-situated applicants, would rely upon substantially the same evidence and require the same witnesses. Accordingly, the most

-20-

efficient and feasible way for class members to pursue their claims is by way of Glover's class action claims in the case at bar.

**D.    DEFINITION OF THE CLASS**

Pursuant to Rule 23(c)(1)(B), Glover seeks certification of a class defined as:

> All applicants who applied for employment with HWD during the period January 1, 2012 through June 30, 2014 using HWD's online or paper-based employment application.

"Defining the class is of critical importance because it identifies the persons (1) entitled to relief, (2) bound by a final judgment, and (3) entitled under Rule 23(c)(2) to the best notice practicable in a Rule 23(b)(3) action." *In re Urethane Antitrust Litig.*, 237 F.R.D. 440, 444-45 (D. Kan. 2006) (internal quotation marks and citation omitted) *aff'd*, 768 F.3d 1245 (10th Cir. 2014).  The definition must be "precise, objective, and presently ascertainable." *Id*.

Glover's proposed class definition meets requirements.  It is sufficiently defined to allow potential class members to be identified for the relevant time period.  And there's no dispute that, from at least January 2012 until approximately August 2014, HWD used employment applications (either an online version or a paper-based version) that contained an *Occupational Health Confidential Pre-Placement Health Assessment* section which requested information about the applicant's family and personal health history, doctors' care status, prescription drug use, and current health issues.  [Fact Nos. 1-7.]

It is, likewise, beyond dispute, that at least 3,289 applicants for employment with HWD, and possibly as many as 5,067 such applicants, were subjected to HWD's routine solicitation of genetic information, including family medical history, and information about a disability or the severity of an applicant's impairments. [Fact Nos. 8 and 8(a), (b), (e), and (f).]  Accordingly, the Court should approve of Glover's proposed class definition.

**E.    GLOVER'S COUNSEL SHOULD BE APPOINTED CLASS COUNSEL PURSUANT TO RULE 23(g)**

As discussed above, Glover is represented by Jonathan Shook of SHOOK & JOHNSON,

PLLC.  Mr. Shook and his firm should be appointed class counsel pursuant to Rule 23(g).

Glover's counsel has been instrumental in identifying and investigating Glover's class claims to date.  Glover's counsel has prosecuted Glover's claims since 2013 and throughout the EEOC administrative process.  [Exs. 13-15.]  And Glover's counsel has continued to do so in this litigation – first intervening to assert class claims not brought by the EEOC and then successfully defending Glover's class claims from a motion to dismiss brought by HWD. Indeed, Glover's class claims may well not have survived HWD's motion to dismiss but for his counsel's work to distinguish HWD's principal exhaustion-related authorities. [Glover Resp. Br. (dkt. #29), pp. 11-13 (distinguishing federal-sector employment cases relied upon by HWD as inapposite to exhaustion issue in this private-sector case); [Order (dkt. #37), pp. 10-15 (noting that "at first glance" the HWD-cited case precluded Glover's class claims but upon inspection finding Glover's argument to be correct and holding Glover had administratively exhausted the class claims).

Further, Glover's counsel is qualified and experienced in federal employment law and litigation in federal court,[12] and Glover's counsel and his firm have the necessary resources to vigorously represent Glover and the putative class members.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff-Intervenor Wilbert Glover requests that the Court enter an Order certifying this case as a class action under FED. R. CIV. P. 23(a) and 23(b)(3) comprised of "All applicants who applied for employment with HWD during the period January 1, 2012 through June 30, 2014 using HWD's online or paper-based employment

---

[12] Mr. Shook has been a member of the Oklahoma bar since 1997 and was admitted to the Missouri bar in 2016.  Since 1999, Mr. Shook has represented hundreds of individuals in their employment-related concerns.  Mr. Shook is an AV® Preeminent rated lawyer by Martindale-Hubbell and has been recognized as an Oklahoma Super Lawyer from 2008 through 2018 in Plaintiff Employment Litigation by Super Lawyers, which is a service of Thomson Reuters.

application."  Further, Glover requests that the Court enter an Order naming him as class

representative in this case and appointing Jonathan E. Shook of SHOOK & JOHNSON, PLLC

as class counsel pursuant to Rule 23(g) of the Federal Rules of Civil Procedure.

**Respectfully submitted,**

**SHOOK & JOHNSON, P.L.L.C.**

**By:    s/ Jonathan E. Shook**

**Jonathan E. Shook, OBA #17343**
**7420 S. Yale Ave.**
**Tulsa, Oklahoma 74136**
**(918) 293-1122 -** *Telephone*
**(918) 293-1133 -** *Facsimile*
**jshook@shookjohnson.com**

**Attorney for Plaintiff-Intervenor,**
**Wilbert Glover**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 11th day of February 2019, I electronically transmitted the attached document to the Clerk of the Court and using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Patrick J Holman
patrick.holman@eeoc.gov

Emily A. Keatley
emily.keatley@eeoc.gov

Lauren W Johnston
lauren.johnston@eeoc.gov

Jo Anne Deaton
jdeatoncourts@rhodesokla.com

John H Tucker
jtuckercourts@rhodesokla.com

Denelda L Richardson
drichardsoncourts@rhodesokla.com

Michael P Robertson
mrobertson@rhodesokla.com

s/ Jonathan E. Shook
Jonathan E. Shook

-24-